Booth, Judge,
delivered the opinion of the court:
There does not seem to be any warrant for a serious division of opinion respecting the facts in this case. An inspection of the record confirms the correctness of the commissioner’s findings.
Two important legal questions are involved. The plaintiff, during the years 1920, 1921, 1922, and 1923, accomplished under distinct and independent bills of lading the transportation of property for the War Department from various points in the United States to San Francisco, Calif. Each of the shipments was made upon an independent Government bill of lading as formulated by the Comptroller of the Treasury and duly approved by the Secretary of the Treasury.
The question at issue arises in this way: The freight, originating at the same place on the same day, but under independent bills of lading, was, without any request or transportation order from the defendant to that effect, *396 loaded into and carried by the plaintiff in a single car. The plaintiff as last carrier rendered its bills for said transportation at the published tariff rates for less-than-carload shipments, and the same were duly allowed and paid. Subsequently the accounting department deducted from other bills for transportation rendered by the plaintiff, and about which there was no question, the sum of $1,387.72, predicating the right so to do upon an alleged duty of the receiving carrier to consolidate all shipments originating at the same point on the same day, and if sufficient to require a single car, to apply in favor of the Government a carload rate lot instead of the rate applicable to less-than-carload shipments.
The Government rests its case upon this item upon a contention that its liability for the payment of transportation under the facts as stated is to be determined by the character of the service furnished rather than the terms of the bill of lading. To this contention we are unable to give our assent. The Government prepares its own bill of lading. The shipment originates upon a transportation request. The Government bill of lading is presented to the receiving carrier’s agent for signature. It is then returned to the Government official and by him mailed to the consignee, who upon receipt of the shipment surrenders the bill to the delivering carrier, and thereafter it serves as the basis for settlement of transportation charges. Upon the independent bills presented to the receiving carrier for the transportation here involved there was absolutely no notice to the effect that the shipments involved a carload lot. No notation appeared thereon that other shipments were to follow, nor any reference whatever to other bills of lading or any transportation request for carload shipments.
The mere fact that the accumulated shipments arriving at different times on the same day at the same point enabled the carrier to transport in a single car does not bring the shipment within the rules promulgated by the Interstate Commerce Commission for carload rates. The applicable rules appear in the findings. They are not obscure, and assuredly the Government, as one of the largest shippers in the United States, may not assert unfamiliarity therewith. *397 A careful consideration of their terms and the purposes to be accomplished by their adoption apparently negative the contention that the defendant may ignore its transportation requests and bills of lading and pay its bills for the transportation upon the service rendered instead. Reno Wholesale Liquor Stores v. Southern Pacific Co., 23 I. C. C. 516.
Section 16 of the interstate commerce act was amended by the transportation act of 1920. Section 424, 41 Stat. 491, 492, of the foregoing statute reads as follows:
“ Sec. 424. The second paragraph of section 16 of the interstate commerce act is hereby amended by inserting ‘(2)’ at the beginning of such paragraph, and by striking-out the last sentence thereof and inserting in lieu thereof the following as a new paragraph:
“(3) All actions at law by carriers subject to this act for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after. All complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues, and not after, unless the carrier, after the expiration of such two years or within ninety days before such expiration, begins an action for recovery of charges in respect of the same service, in which case such period of two years shall be extended to and including ninety days from the time such action by the carrier is begun. In either case the cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after. A petition for the enforcement of an order for the payment of money shall be filed in the district court or State court within one year from the date of the order, and not after.”
The defendant as to the claims embraced in Findings IX and X invokes the foregoing amendment, and contends that under the facts with respect to these two claims they are barred by limitation.
The plaintiff does not challenge the facts, but insists that under section 156 of the Judicial Code his right of action extends for six years from the date of accrual.
The pertinent part of section 156 of the Judicial Code is as follows:
“ Every claim against the United States cognizable by the Court of Claims shall be forever barred unless the peti *398 tion setting forth a statement thereof is filed in the court, or transmitted to it by the Secretary of the Senate or the Clerk of the House of Representatives, as provided by law, within six years after the claim first accrues.”
Obviously paragraph 3 of the transportation act of 1920 contains no express language making it applicable as a statute of limitations to this court. If the result follows, it is to be deduced by implication. Therefore at the outset the defendant’s contention encounters the rule that a repeal of a statute by implication is not favored by the law. There exists some reasons of convincing weight, aside from the provisions of the transportation statutes, inimical to the defendant’s contention. Section 156 of the Judicial Code has been continuously since 1863 the general statute of limitations applicable to the prosecution of claims against the Government in this court. It has not been rendered inapplicable during this time, except by a statute clearly indicating such an intention with reference to a particular class of claims. Section 3221, Revised Statutes, in prescribing limitations for the recovery of internal revenue taxes alleged to have been erroneously or illegally assessed or collected, limited the right of action “ in any court * * * to two years after the cause of action accrued.” We held in the case of Fort Pitt Gas Co. v. United States, 49 C. Cls. 224, that the plaintiff’s cause of action was barred in this court under section 3221, Revised Statutes. The defendant cites no other case, and it is manifest from a reading of the statute that the words “ in any court ” indicate a clear intention to prescribe a definite limitation in all courts.
The Government is one if not the carrier’s largest patron. The innumerable transactions involving the transportation of Government property, accomplished uniformly by extending credit to the United States for the payment of freight charges, makes it indispensable to establish a system of rules and regulations of accounting and settlement, in some respects sui generis, and inapplicable to the ordinary commercial transactions between the carriers and private shippers. A formal Government bill of lading, prepared by the Comptroller of the Treasury, with the approval of the Secretary of the Treasury, is signed by the carrier. It is then returned *399 to and thereafter transmitted by the shipper to the consignee, and upon accomplishment of the shipment is surrendered by the consignee to the company and then becomes the basis of the setttement of freight charges to be paid by a disbursing officer.
While in the vast majority of instances the charges are promptly paid upon presentation, nevertheless a large number of litigated cases, just as the facts herein disclose, arise from subsequent deductions made by the accounting officers from undisputed transportation bills some months and frequently years after the initial payment was made. Disputes arise over the application of land-grant deductions, thereby placing Government transportation in a somewhat different situation from that which obtains in the ordinary commercial shipment. In addition to what has been said, the interstate commerce act has continuously made exceptions as to the application of the law to Government transportation. The Government may by special contract obtain a special rate. Missouri Pacific v. United States, 56 C. Cls. 341; St. Louis, Brownsville and Mexico Ry. Co. v. United States, 268 U. S. 169, 173. Likewise it is entitled to an extension of credit in the payment of freight charges, direct recognition of the somewhat exceptional relationship of the Government to interstate carriers.
It is difficult from a review of the statutes involved to conclude that Congress intended to apply the three-year limitation to claims of carriers against the Government. In the case of Interstate Commerce Commission v. Baltimore & Ohio Railroad Co., 145 U. S. 263, 276, the Supreme Court said:
“ The principal objects of the interstate commerce act were to secure just and reasonable charges for transportation; to prohibit unjust discriminations in the rendition of like services under similar circumstances and conditions; to prevent undue or unreasonable preferences to persons, corporations, or localities; to inhibit greater compensation for a shorter than for a longer distance on the same line; and to abolish combinations for the pooling of freights.”
Manifestly the intention here is to regulate and control the relationship between the interstate carriers and private in *400 dividuals, natural and corporate. Congress was dealing with the ordinary commercial transportation. All doubt with respect to the fact is put at rest by section 22 of the original interstate commerce act, wherein it is provided: “ That nothing in this act shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, State or municipal Governments.” This same exception in favor of the Government was carried forward in the transportation act of 1920. This statute in amending paragraph 3 of section 16 of the interstate commerce act, by paragraph (2) thereof, restrained the railroads from relinquishing possession to freight transported until all tariff rates and charges thereon have been paid at the point of destination, except under such rules and regulations as the Interstate Commerce Commission may prescribe; but a proviso thereto in precise and express terms excepted the United States as well as all other political subdivisions of the Nation from its operation.
The extension of credit to the United States, together with the right to secure and profit by rates other than the published tariffs, seems to clearly indicate that Congress was legislating in the adoption of this amendment, with reference to commercial transportation, to transportation furnished to private shippers and not the Government. The act of June 7, 1924, again amends paragraph 3 of section 16 of the interstate commerce act, 43 Stat. 633, with the exception of paragraph (a), the three-year statute of limitation; the remaining sections prescribing limitations for the prosecution of claims for damages and overcharges are inapplicable to Government transportation. The means available to the Government for reimbursement of all overcharges, damages, etc., dealt with in the section of the transportation act in issue, is by deducting from unpaid and undisputed bills for subsequent transportation — a proceeding in the nature of a counterclaim — leaving the carrier the right and the burden to sue in this court for the recovery of the amount deducted. The section of the transportation act of 1920 under which the defendant pleads the three-year limitation is part of the general scheme to require immediate *401 payment of freight charges prior to the relinqúishment by the carrier of possession of the freight.
In the class of cases coming to this court, without exception the suit of the carrier is uniformly delayed far beyond the date of delivery of the shipment because, as previously observed, the freight charges due the carrier, as appears from the transportation request and the bill of lading, are generally promptly paid, and the carrier has no cause of action until the subsequent deduction is made by the accounting officer. The defendant attributes the adoption of the policy of immediate settlement of freight charges to an intent upon the part of Congress to have available information as to the financial status of the carriers, and to effectually forestall preferences and discriminations. Manifestly, from what we have heretofore said, the exceptions in the law favorable to the Government, supplemented by the processes of Government accounting, preclude the possibility of applying the contention to this case. Again, paragraph (e) of the transportation act of 1920, as well as the act of 1924, fixes a specific date for the accrual of the right of action for freight charges. This section provides:
“ In either case the cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier and not after.”
In this case the plaintiff had no cause of action when the shipment was delivered because his transportation bills were paid in full. The cause of action herein did not accrue until the deductions were made from subsequent bills, some of the deductions being made as late as February, 1923, from bills wherein the property had been delivered to the Government in 1921. No limitation is applicable to the Government, and in exceptional cases it may appear that more than three years have elapsed from date of delivery before the deduction is made. Therefore, it seems to the court that Congress was not legislating in so far as the provisions of the transportation act relied upon are concerned with reference to Government transportation and Government settlements *402 therefor. The intent was to regulate the ordinary commercial shipments.
The first amendment to section 16 of the interstate commerce act prescribing limitations for litigation is found in the act of June 18, 1910, 36 Stat. 539, 554, an act amending the original interstate commerce statute and creating the commerce court. The act of 1910 prescribes a two-year limitation for the presentation to the Interstate Commerce Commission of petitions for the recovery of damages upon the part of the shipper, and a further limitation of one year for the filing in the circuit or State courts of a petition to enforce an order of the commission to pay money to the shippers. Obviously this statute is dealing exclusively with commercial transactions. It is inapplicable to Government transactions and would be difficult to conceive that Congress had in mind suits against the Government when it was enacted. Subsequently section 16 was again amended by paragraph 3 of section 424 of the transportation act of 1920, 41 Stat. 490, 491, wherein the three-year limitation now relied upon by the defendant first appears. We have heretofore quoted it in full.
Taking the acts of 1910, 1920, and the act of 1924, 43 Stat. 633, together and in logical sequence, it is manifest, from a comparison, that Congress, by the act of 1920, was prescribing express limitations for the first time upon the carrier’s right to sue for freight charges and imposing what it had failed to impose in the act of 1910, limitations upon the carriers as well as the shippers. It was in effect providing reciprocal rights and limitations upon both the shipper and the carrier. That this was the intent and purpose of Congress seems inescapable. There is nothing in this legislation to suggest its application to suits in the Court of Claims. On the contrary, it is replete with provisions relating exclusively to the application of the shipper to the Interstate Commerce Commission and the functions and processes of the commission in the exercise by the commission of its jurisdiction over the railroads and private shippers. Con *403 gress was not engaged in considering section 156 of the Judicial Code, this court’s ancient and general statute of limitations. It was concerned alone with transactions between the railroads and private parties, where the former practice of preferences and discriminations had worked a deplorable injustice and brought about the necessity for the legislation. E. I. Dupont de Nemours da Co. v. Davis, Director General of Railroads, 264 U. S. 456.
A further anomalous situation would prevail in this court if the carriers are limited to three years instead of six in prosecuting their claims against the Government.
Section 400 of the transportation act of 1920, 41 Stat. 474, declares:
“(2) The provisions of this act shall also apply to such transportation of passengers and property and transmission of intelligence, but only so far as such transportation takes place within the United States, but shall not apply—
“(a) To the transportation of passengers or property, or to the receiving, delivery, storage, or handling of property, wholly within one State and not shipped to or from a foreign country from or to any place in the United States as aforesaid.”
Therefore, as to intrastate transportation of Government property the carrier would be free to prosecute claims against the Government at any time within the six-year period provided in section 156 of the Code, and as to interstate transportation limited to three years. Such would manifestly be the result. The Supreme Court in Kansas City Southern Railway Co. v. Wolf, 261 U. S. 133, expressly held that such an application of the statute of limitations was untenable. See also Illinois Gentral Railroad Co. v. Public Utilities Com., 245 U. S. 493.
The plaintiff is entitled to a judgment for $1,282.50. It is so ordered.
Graham, Judge/ Hay, Judge; and Campbell, Chief Justice, concur.