## SOUTHERN PAC. CO. v. UNITED STATES.

### No. 46018.

Court of Claims.
Jan. 6, 1947.

Lawrence Cake, of Washington, D. C. (C. O. Amonette, of San Francisco, Cal. on the brief), for plaintiff.

Henry Weihofen, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (Louis R. Mehlinger, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHALEY, Chief Justice.

The plaintiff is a common carrier by railroad, a portion of whose leased lines had been aided in its construction by grants of public lands. The plaintiff was one of numerous land-grant railroads. The services here involved were transportation of the United States mail during the period December 6, 1940, to December 27, 1940, inclusive, over mileage aided by land grants. The plaintiff claims full mail rates

determined by the Interstate Commerce Commission as reasonable for an unaided line. The defendant says that the rates to be paid are those for a line, land-aided to the extent that plaintiff or its predecessors in interest were. The difference in the land-grant and non-land-grant rates amounts to $10,510.49 for the period December 6, 1940, to December 27, 1940, inclusive. For a shorter period December 11, 1940, to December 27, 1940, to be explained hereinafter, the difference is $9,077.19.

The Transportation Act of 1940, 54 Stat. 898, approved September 18, 1940, made certain provisions for putting into effect full non-land-grant rates on Government mail, that is, rates set by the Interstate Commerce Commission as reasonable without regard to land aid. Section 321(a) of this Act, 54 Stat. page 954, 49 U.S.C.A. § 65, states that "The rate determined by the Interstate Commerce Commission as reasonable therefor shall be paid for the transportation by railroad of the United States mail", with certain provisos not here relevant.

But (b) of Section 321 of the Act is the subsection that especially concerns this case. It is as follows:

"(b) If any carrier by railroad furnishing such transportation, or any predecessor in interest, shall have received a grant of lands from the United States to aid in the construction of any part of the railroad operated by it, the provisions of law with respect to compensation for such transportation shall continue to apply to such transportation as though subsection (a) of this section had not been enacted until such carrier shall *file with the Secretary of the Interior, in the form and manner prescribed by him, a release* of any claim it may have against the United States to lands, interests in lands, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to have been granted, or which it is claimed should have been granted to such carrier or any such predecessor in interest under any grant to such carrier or such predecessor in interest as aforesaid. Such release must be filed within one year from [the date of the enactment of this Act.] Nothing in this section shall be construed as requiring any such carrier to reconvey to the United States lands which have been heretofore patented or certified to it, or to prevent the issuance of patents confirming the title to such lands as the Secretary of the Interior shall find have been heretofore sold by any such carrier to an innocent purchaser for value or as preventing the issuance of patents to lands listed or selected by such carrier, which listing or selection has heretofore been fully and finally approved by the Secretary of the Interior to the extent that the issuance of such patents may be authorized by law." [Italics supplied.]

By this provision a land-grant carrier was enabled to relieve itself of the burden of carrying the mails at land-grant rates, that is, at rates less than those paid to non-land-grant carriers. The percentage of such reduction is not here in issue. But in order to get this relief, the carrier had to "file with the Secretary of the Interior, in the form and manner prescribed by him, a release of any claim it may have against the United States to lands, interest in lands, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to have been granted, or which it is claimed should have been granted to such carrier or any such predecessor in interest under any grant to such carrier or such predecessor in interest as aforesaid. Such release must be filed within one year from [the date of enactment of this Act]."

Releases were filed by the plaintiff covering grants to the Southern Pacific Railroad Company and to the Central Pacific Railway Company, the plaintiff having succeeded to their interests.

Purported releases were first filed October 28, 1940. However, the Secretary of the Interior did not prescribe the form and manner of filing releases until November 10, 1940. The purported releases did not conform to the requirements so prescribed and were returned to the plaintiff.

The plaintiff does not contend that the filing of October 28, 1940, fulfilled statutory requirements.

After the releases were returned to it, the plaintiff reformed them, and filed the

revised releases, for the Southern Pacific Railroad Company December 6, 1940, and for the Central Pacific Railway Company December 11, 1940. The plaintiff claims that these were the statutory filing dates which governed the plaintiff's transition from the status of a land-grant to that of a non-land-grant road. The revised releases, so filed, did not, however, conform to the regulations then in effect.

The releases were being handled by the General Land Office and that office December 21, 1940, upon considering the variance, recommended to the Secretary of Interior that they nevertheless be approved. The Assistant Secretary approved them December 28, 1940. It is defendant's position that plaintiff's transition from a land-grant to a nonland-grant road did not take place until December 28, 1940, and on this question of dates is based the present controversy.

Section 273.67 of the administrative regulations provides:

"*Validity*. The filing of a release will not be complete and effective for the purpose of enabling the carrier to invoke the benefits of section 321(a) of Part II of Title III of the Transportation Act of 1940 until it has been filed in the form and manner prescribed by these regulations, *and until the release has been approved by the Secretary of the Interior*. The company will be given prompt notice of such approval, or other action." [Italics supplied.]

It is true that the statute does *not* say "until the release has been approved by the Secretary of the Interior." What the statute does say is: "until such carrier shall file with the Secretary of the Interior, in the form and manner prescribed by him, a release," etc.

The releases as filed December 6 and 11, 1940, turned out eventually to be in the form and manner later prescribed by the Secretary of the Interior (the Assistant Secretary acting for him), but this compliance did not become apparent until December 28, 1940, the date of approval, when the question of compliance was determined.

Although the statute did not refer to an "approval", eo nomine, it did give the Sec-

retary authority to prescribe form and manner. It might very well be that the "form and manner" of the release was not a simple proposition, that it might vary from case to case, and that it was advisable if not necessary for the Secretary to reserve to himself the imposition of requirements that he could not foretell and embody beforehand in formal regulations. This situation was met by the administrative office when it reserved to the Secretary the right of approval. That is to say, the Secretary might at the last moment amend or supplement his regulations, and this he did when by his approval he, for one thing, changed the requirement of county officers' certificates to the furnishing of a certificate by the "Land Commissioner." This waiver, or substitution, was, in fact, made at the request of plaintiff's resident attorney.

Boiled down to its essentials, the situation presented shows that the final form and manner as to plaintiff's releases were not fully prescribed and confirmed by the Secretary until the date of approval December 28, 1940.

The releases filed December 6 and 11, 1940, were not in the form and manner then prescribed. They did not then conform to the regulations. They did not so conform until the Secretary's act of approval had changed those regulations to fit the particular circumstances of plaintiff's case. Instead of the releases being changed to conform to the regulations, the regulations, by the act of approval, were modified to conform to the releases.

We are, therefore, of opinion and so hold, that valid releases, releases conforming to the statutory requirements, were not filed before December 28, 1940. This makes it unnecessary to decide the question as to which of the two dates, December 6 or December 11, 1940, is controlling as to the amount of recovery. The conclusion arrived at also obviates the necessity of determining the not so simple question of what constitutes a "filing" within the terms of the statute. Statutory releases were not on file until the Secretary had waived the regulations and determined finally that no more requirements were necessary. By reserving the right to approve, he had reserved the right to vary his requirements.

214

The plaintiff is not entitled to recover. Its petition is dismissed, and it is so ordered.

MADDEN, JONES, WHITAKER, and LITTLETON, Judges, concur.