### SEABOARD. AIR LINE R. CO. v. UNITED STATES. ·

#### No. 47502.

United States Court of Claims.

May 2, 1949.

Frank J. Wideman, of Washington C., for plaintiff.

S. R. Gamer, of Washington, , H. G. Morison, Asst. Atty Gen. (L. R. Mehlinger, of Washington, D. C., on th brief), for defendant.

Before JONES, Chief Judge, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

Plaintiff sues for the sum of $2,295.32 to which it claims it is entitled, in addition to the sum already paid it, for the carriage of the United States mails between November 5 and November 26, 1940, both inclusive. November 5 is the date upon which plaintiff filed the release required by section 321 of Title III, Part II, of the Transportation Act of 1940, 54 Stat. 898, 954, as amended by the Act of December 12, 1945, 59 Stat. 606-607, 49 U.S.C.A. § 65. On November 27, 1940, the Secretary of the Interior approved the release filed on November 5.

Section 321(a) of the Transportation Act of 1940, as amended, reads: "Notwithstanding any other provision of law, but subject to the provisions of sections 1(7) and 22 of the Interstate Commerce Act, as amended, the full applicable commercial rates, fares, or charges shall be paid for transportation by any common carrier subject to such Act of any persons or property for the United States, or on its behalf, and the rate determined by the Interstate Commerce Commission as reasonable therefor shall be paid for the transportation by railroad of the United States mail * * *."

Subsection (b) of section 321 reads in part as follows: "(b) If any carrier by railroad furnishing such transportation, or any predecessor in interest, shall have received a grant of lands from the United States to aid in the construction of any part of the railroad operated by it, the provisions of law with respect to compensation for such transportation shall continue to apply to such transportation as though subsection (a) of this section had not been enacted until such carrier shall file with the Secretary of the Interior, in the form and manner prescribed by him, a release of any claim it may have against the United States to lands, interest in lands, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to have been granted, or which it is claimed should have been granted to such carrier or any such predecessor in interest under any grant to such carrier or such predecessor in interest as aforesaid. * * *"

As stated above, plaintiff filed the release required by subsection (b) on November 5, and on November 27, 1940, the Secretary of the Interior approved the release as filed.

Prior to the Transportation Act of 1940 a land-grant railroad was entitled to only 80 percent of the rates fixed by the Interstate Commerce Commission for the carriage of mail. Under the Transportation Act of 1940 it was entitled to 100 percent of these rates after the filing of a release "in the form and manner prescribed by" the Secretary of the Interior.

The Comptroller General ruled that plaintiff was entitled to the full 100 percent only after the date the Secretary of the Interior had approved the release as filed. Plaintiff claims it is entitled to 100 percent from the date it filed the required release.

Section 273.64 of General Land Office Circular No. 1480, 6 F.R. 422, provides for the form of the release. Section 273.65 provides for the manner of the release, and section 273.67, under the heading of "Validity" reads as follows: "The filing of a release will not be complete and effective for the purpose of enabling the carrier to invoke the benefits of section 321 (a) of Part II of Title III of the Transportation Act of 1940 until it has been filed in the form and manner prescribed by these regulations, and until the release has been approved by the Secretary of the Interior. * * * "

It was because of the clause in section 273.67, reading "and until the release has been approved by the Secretary of the Interior," that the Postmaster General and the Comptroller General refused to pay plaintiff 100 percent for the carriage of the mails between November 5, the date of the filing, and November 27, the date of the approval of the release.

■ This action of the Postmaster General and the Comptroller General was erroneous. Under the law the plaintiff became entitled to 100 percent of the rates fixed upon the filing of the proper release. The Act did not make its right thereto conditioned upon approval of the release by the Secretary of the Interior. Under the Act of Congress plaintiff was entitled to 100 percent from the time it filed the required release. The Act reads: "The provisions of law with respect to compensation for such transportation shall continue to apply to such transportation as though subsection (a) of this section had not been enacted until such carrier shall file with the Secretary of the Interior, in the form and manner prescribed by him, a release of any claim it may have against the United States to lands * * * ."

We do not see how there can be any doubt that under the Act plaintiff became entitled to 100 percent as soon as it had complied with the condition prescribed by the Act, and that condition was the filing of a release "in the form and manner prescribed by" the Secretary of the Interior. This the plaintiff did on November 5.

On November 26 the Commissioner of the General Land Office wrote a letter to the Secretary of the Interior, in which he said: "The release conforms to the law and regulations and I recommend that it be approved." On November 27, 1940, the Secretary of the Interior approved it. In other words, they said that on November 5, 1940, the plaintiff had filed the release in the form and manner as set forth in the Act and the regulations issued pursuant thereto. On November 5, 1940, the plaintiff had done those things which the Act required as a condition to its right to receive 100 percent of the rates fixed by the Interstate Commerce Commission. The Secretary of the Interior had no authority to place an additional condition on plaintiff's right to receive the full rates fixed. When plaintiff had complied with the conditions prescribed by Congress, its right matured.

This case is different from Southern Pacific Company v. United States, 69 F.Supp. 211, 107 Ct.Cl. 513, certiorari denied 332 U.S. 757, 68 S.Ct. 55, 92 L.Ed. 343. In that case the plaintiff did not comply with the regulations. Instead, it offered something in lieu of the thing required by the regulations. Until plaintiff's offer had been accepted and approved by the Secretary of the Interior, there had been no compliance with the regulations, and, hence, not until then did plaintiff become entitled to 100 percent of the rates. In this case plaintiff fully complied with the regulations on November 5, as the Secretary of the Interior has certified. Upon compliance, its right to the full rates accrued.

■ 2. But defendant says that the Transportation Act of 1940 requires a carrier to sue for its charges within two years and that this action was instituted thereafter and is, therefore, barred.

The general statute of limitations applicable to suits against the United States is six years (sec. 2501, Title 28 U.S.C.A.; old Judicial Code, sec. 156); but defendant says that as to carriers having claims against the United States the statute is different, that

as to them it is two years, instead of six years, within which all other claimants[1] may sue.

No reason occurs to us why carriers should be restricted to two years, whereas all other claimants are allowed six years But the Transportation Act of 1940 in section 11(a) (2), 54 Stat. 898, 912-913, 49 U.S.C.A. § 16(a) (3), does say that "All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after."

The question is, does this apply to a carrier's claim against the United States for mail pay.

In Southern Pacific Co. v. United States, 62 Ct.Cl. 391, we held that a similar restrictive statute in an earlier Transportation Act was not intended to apply to suits by carriers against the United States. Defendant says this decision was wrong and asks us to overrule it. It was evidently a carefully considered decision. The question was discussed by Judge Booth, later Chief Justice, at some length. It was concurred in by the other judges participating in the case, including Chief Justice Campbell, who had written some earlier opinions indicating a contrary view.

We have carefully reviewed this opinion and the earlier ones and conclude that the opinion expressed in Southern Pacific Co. v. United States, supra, is correct. We conceive of no reason why Congress should have intended to allow other claimants against the Government six years in which to present their claims and to have intended to restrict railroads to two years.

 The Transportation Act of 1940 and its predecessors were general statutes regulating commerce generally. Its provisions had to do with various and sundry aspects of commerce both on the land and the sea. The carriage of government property and the mail was dealt with, but Congress was chiefly concerned with the carriers' relationship to each other and with the private shipper. This was the subject uppermost in the mind of Congress when the Acts were passed. We feel reasonably confident that when Congress said a carrier must bring its suit for its charges within two years, it did not have in mind suits against the Government. Our decision in Southern Pacific Co. v. United States, supra, was rendered on June 14, 1926, 23 years ago. During all that time the correctness of the decision had not been questioned, although there had been many opportunities to do so. Also, it is to be presumed that Congress knew of the decision when it passed the Transportation Act of 1940. If it did, its failure to state explicitly that the limitation was intended to apply to suits against the Government is an indication that it did not intend it to so apply.

We do not further elaborate the point, but stand upon what we said in Southern Pacific Co. v. United States, supra.

Plaintiff is entitled to recover the sum of $2,295.32. Judgment for this amount will be entered. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges concur.