**ATLANTIC COAST LINE R. CO. v. UNITED STATES.**

No. 183–52.

United States Court of Claims.

June 2, 1953.

Robert R. Faulkner, Washington, D. C., for plaintiff.

Laurence H. Axman, New York City, with whom was Asst. Atty. Gen. Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges

MADDEN, Judge.

The plaintiff sues the Government for freight charges earned by it in carrying goods for the Government, but not paid because they were set off by the Government's fiscal officers against alleged overcharges on an earlier shipment. Our question is whether there were overcharges on the earlier shipment.

In 1944 the Government ordered five open cars, each to be 40 feet long, to carry certain trailers from Mansfield, Louisiana. The trailers could have been loaded on 40-foot cars. The railroad presented five cars, each 42 feet long. The Government used the 42-foot cars. By published tariffs in force at the time, the minimum weights for which the shipper had to pay freight charges for carload shipments, even though his load weighed less than those minima were, for 40-foot cars, 20,-000 lbs., and for 42-foot cars, 24,400 lbs. The trailers weighed less than either of these minima. The difference in freight charges for the different minimum weights, for the five cars was, for the shipment here in question, $239.80. The plaintiff, the terminal carrier, collected the larger amount. As we have said, the Government later took the $239.80 back by offset, and the plaintiff sues for it.

Rule 34 of the Interstate Commerce Commission has been in effect for many years, and was, at the time of the shipments in question, published by the carrier in Consolidated Freight Classification No. 16 (Ratings, Rules and Regulations) issued as of October 25, 1943, and effective December 6, 1943. It contained many provisions relating to many different subjects. On page 136 of Rule 34 appeared a heading, *"Shipments on Open Cars"*, and, under that heading was, *inter alia*, Section 6 (a) which said:

"If carrier is unable to furnish open car of length ordered, and furnishes longer car, minimum weight shall be that fixed for car furnished, except that if articles are of such length as could have been loaded on car of length ordered, minimum weight shall be that fixed for car ordered."

It will be observed that Section 6 (a) applied only to situations where the carrier was *unable* to furnish a car of the size ordered by the shipper. The rule, apparently unwritten before the promulgation of Section 6 (a), seems to have been that the carrier, by publishing a tariff listing various sizes of cars, held itself out as being able to furnish them, and hence could not charge the shipper more, because it furnished cars different from those ordered. Kaye & Carter Lumber Co. v. M. & L. Ry. Co., 16 I.C.C. 285. Section 6 (a) modified this doctrine somewhat in the cases where the carrier was *unable* to furnish the cars of the specified size. Under 6 (a) the shipper was still entitled to the rate for the size of car ordered, unless it appeared that his shipment would not have fitted that kind of car. One would suppose that, even without 6 (a), the shipper could not have had the lower rate if the smaller car ordered would not have held his shipment. It would seem, then, that 6 (a) did not, in reality, have much effect.

On January 30, 1942, the Interstate Commerce Commission promulgated Service Order No. 68, effective February 15, 1942, which ordered, *inter alia*:

"That the operation of Rule 34 of Consolidated Freight Classification No. 14, as amended, in so far as it permits railway freight cars to be used for the shipment of carload freight otherwise than subject to the carload minimum weight for each car used be, and it is hereby, suspended."

On its face, this order would seem to forbid carriers to charge less than the charges for the minimum weights applicable to the cars actually used, no matter what size of cars the shipper had ordered. The plaintiff bases its claim upon that construction.

The Commission, in its preamble to Service Order No. 68, stated that the emergency of war required immediate action to prevent shortages of railroad equipment and congestion of traffic; and that the provisions contained in Rule 34, and other tariffs containing similar provisions in respect of the furnishing, substitution, and use of multiple cars for single shipments, subject to carload rates, result in wasteful car service in interstate commerce. In Proctor & Gamble Co. v. Pennsylvania R. R. Co., 270 I.C.C. 393, the Commission said:

"Service Order No. 68 was issued for the express purpose of preventing misuse and wasteful use of railroad equipment, practices declared therein to be detrimental to the public interest and the prosecution of the war. It was not a revenue measure. By it the Commission neither prescribed rates or charges nor sanctioned those then in effect."

Service Order No. 68 apparently applied to many situations covered by Rule 34 and not involved in the instant litigation. Our problem is to determine what effect it had on Section 6 (a). Keeping in mind that Section 6 (a) applied only to cases where the carrier was *unable* to furnish the car of the size ordered, it would seem that the suspension, by Service Order No. 68, of unspecified portions of Rule 34 would have had no application to situations where the carrier, though able, did not furnish a car of the size ordered. Since 6 (a) did not apply, the suspension of 6 (a) would also not apply.

The plaintiff seems to urge that Service Order No. 68 not only suspended 6 (a) but also the fundamental unwritten doctrine that a carrier may not furnish a car larger than the one ordered, though it could have furnished the one ordered, and charge the shipper for the larger one. Such a construction of Service Order No. 68 would present serious problems.

■■ If cars of the size ordered were available, it would take no longer to furnish them than it would to furnish other cars, and unnecessarily furnishing longer cars would accomplish only two things: (1) waste of space in cars and of fuel in hauling them partly empty; and (2) an increase of charges to the shipper for which he got nothing in return. If cars

of the size ordered were not available, we can see how Service Order No. 68 might expedite the use of cars. The railroad would not have a tendency to hold back the furnishing of a larger car, as it would under Section 6 (a) when it was not going to get paid for the extra size of the car. It would furnish promptly whatever car it could; the shipper would probably accept it, and the shipment would get on its way. While this does not seem to us to be a very cogent justification for Service Order No. 68, as applied to Section 6 (a), it must be that, in the expert and informed judgment of the Commission, it was thought that it would serve a useful purpose. But in the situation discussed above where a car of the size ordered was available, it could have served no useful purpose at all and its effects would have been harmful and wasteful. Since the Commission which promulgated it has denied that it was intended as a rate-raising measure, and since its application to such a situation would not improve car service, but would have the opposite effect, we construe the order as not applying to that kind of a situation. We further conclude that if it was intended by the Commission to apply to such a situation it was invalid since it was promulgated under the Commission's authority, granted by the provisions of the Interstate Commerce Act, 24 Stat. 379, as amended, 49 U.S.C.A. § 1 (15), to, in an emergency requiring immediate action, suspend the operation of rules, regulations, or practices relating to car service. Under this authority, the Commission could not take action, the only effect of which would be to make car service worse. In Iversen v. United States, 63 F.Supp. 1001, Judge Prettyman, sitting in the District Court for the District of Columbia, held invalid and enjoined the application of that part of a demurrage rule promulgated by the Commission which could not have served any purpose of expediting the use of cars, and the only effect of which was to increase charges to the shipper.

■ We recognize, of course, that we have no jurisdiction to review a rate fixed by the Interstate Commerce Commission. United States v. Jones, 336 U.S. 641, 69 S.Ct. 787, 93 L.Ed. 938. But in the Jones case the court, 336 U.S. at page 667, 69 S.Ct. at page 801, discussed a number of cases in which this court had, properly, made decisions regarding the charges of carriers whose rates were fixed by the Commission. The court said:

"In each of these cases the claimant carrier recovered compensation in excess of that allowed it by the Postmaster General, but in each case the dispute centered around the *meaning* of a Commission rate order or the Commission's *power* to enter the order made". [Italics in original.]

■ In the instant case the plaintiff does not allege that the initial carrier was unable to furnish cars of the size ordered by the Government. In an affidavit filed in support of its motion for summary judgment, the Assistant Auditor of Freight Receipts of the plaintiff company, which, it will be remembered, was not the initial carrier that furnished the cars, after stating that the Government had ordered 40-foot cars, says—

"Normally 40-foot cars would have been furnished, if available. However, the carrier furnished cars 42 feet in length, which cars were accepted and used by the Government * * *."

This equivocal statement, made by one who could not have known the facts except by hearsay, is, of course, not an adequate basis for a summary judgment.

The plaintiff's motion is denied.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.