ATLANTIC COAST LINE RAILROAD
COMPANY
v.
The UNITED STATES.
No. 183-52.

United States Court of Claims.
May 1, 1956.

U. B. Ellis, Wilmington, N. C., for plaintiff. Robert R. Faulkner, Washington, D. C., was on the briefs.

Laurence H. Axman, New York City, with whom was Acting Asst. Atty. Gen. Geo. S. Leonard, for defendant. Pauline B. Heller, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues for freight charges admittedly earned in carrying freight for the Government, but not paid because the Government claimed that the plaintiff had overcharged it on former shipments, and deducted the amount of the alleged overcharges from the freight earned. The question is whether the plaintiff did overcharge the Government on the former shipments and, if so, whether it was lawful for the Government to pay itself for the overcharges by deducting their amount from the freight later earned by the plaintiff.

At an earlier stage of this case the plaintiff made a motion for a summary judgment. The court rendered an opinion denying the motion, which opinion is reported in 112 F.Supp. 594, 125 Ct.Cl. 235. The history of the controversy and the contentions then made by the parties are stated in that opinion. After the denial of the motion for a summary judgment, the case went to trial before a commissioner of this court, who has made a report finding the facts which he regarded as pertinent. The parties have again briefed and argued the case.

The rates charged on the earlier shipments, here asserted by the Government to have been overcharges, are sought to be justified by the plaintiff because, it claims, they were authorized by Service Order No. 68 of the Interstate Commerce Commission, effective February 15, 1942. In our former decision we held that if Service Order No. 68 is interpreted as authorizing a railroad to furnish a car longer than the car ordered by the shipper, and charge the shipper for the extra and unnecessary capacity, even though the carrier had available and could have furnished a car of the size ordered, Service Order No. 68 was illegal because it was beyond the powers of the Interstate Commerce Commission to issue such an order. We let the case go to trial in order to ascertain whether, in the instances involved in this suit, the railroad, when it furnished cars larger than those ordered by the Government, did so because it was unable to furnish cars of the sizes ordered.

In the hearing before our commissioner, the evidence as to whether the railroad was unable to furnish cars of the size ordered was by no means conclusive. For that reason, apparently, the plaintiff urges other reasons why it ought to prevail, and we will discuss those reasons first.

 The plaintiff urges that if we decide that the Government was overcharged on the shipments in question, we will be reviewing the reasonableness of rates fixed by the Interstate Commerce Commission, and that we have no jurisdiction to do that. In our earlier opinion in this case we recognized that we had no such jurisdiction. We did assert jurisdiction, in a case otherwise properly before us, to decide the question of law as to whether the Commission had the power, under the statutes, to issue Service Order No. 68, if that order is to be given the effect which the plaintiff claims for it. We called attention to the statement by the Supreme Court in United States v. Jones, 336 U. S. 641, 69 S.Ct. 787, 93 L.Ed. 938, in which the Court discussed a number of cases in which this court had made decisions regarding the charges of carriers whose rates were fixed by the Commission. The Court said, 336 U.S. at page 667, 69 S.Ct. at page 801:

"In each of these cases the claimant carrier recovered compensation in excess of that allowed it by the Postmaster General, but in each case the dispute centered around the *meaning* of a Commission rate order or the Commission's *power* to enter the order made; [Italics in original.]"

The Commission is the body authorized by law to make rates, but it is not a body authorized to make law; therefore any court in which the question of the legal power of the Commission becomes relevant to the decision of a case, must decide that question.

 The plaintiff urges that, regardless of the power of the Commission to issue Service Order No. 68 with the effect claimed for it, the railroad filed a tariff embodying the rule of the Service Order, and the rate fixed in that tariff thereupon became the only lawful rate. The tariff filed was only a quotation of Service Order No. 68 and a short statement as to its meaning. A tariff repeating an unlawful order of the Interstate Commerce Commission can not, we think, be valid if the order authorizing it is invalid. We have reconsidered the question of our jurisdiction, in this regard, and adhere to the views expressed in our former opinion.

The plaintiff says that this court has no jurisdiction to permit the Government's asserted setoff because the claim of overcharge asserted in the setoff is barred by the statute of limitations. Section 16 of the Interstate Commerce Act, 49 U.S.C.A. § 16, prescribes a 2-year statute of limitations on actions for overcharges or for reparations based on unreasonableness of published tariffs. Such a cause of action accrues when a shipment is delivered. The shipments here in question were delivered in 1944. The plaintiff's suit, based of course upon later shipments on which it admittedly earned freight, was not filed until 1952, and the Government's answer, asserting the overcharges on the 1944 shipments, was filed thereafter.

 If the Government had filed its claim for overcharges with the Interstate Commerce Commission, it would have had to do so within 2 years after 1944. U. S. v. A. and W. Ry. Co., 294 I.C.C. 5, 12. Under Section 322 of the Transportation Act of 1940, 49 U.S.C.A. § 66, the United States is required to pay charges for transportation without waiting for an audit by the General Accounting Office. However,

"the right is reserved to the United States Government to deduct the amount of any overpayment to any such carrier from any amount subsequently found to be due said carrier."

Since a claim by a railroad for an administrative settlement may be presented to the General Accounting Office at any time within 10 years after the claim

accrues, 31 U.S.C.A. §§ 71a, 237, and since such a claim may be sued upon in this court at any time within 6 years after it accrues, 28 U.S.C.A. § 2501, Seaboard Airline Railroad Co. v. United States, 83 F.Supp. 1012, 113 Ct.Cl. 437, certiorari denied 338 U.S. 848, 70 S.Ct. 88, 94 L.Ed. 519, it would be remarkable if the Government's right of setoff were barred 2 years after the delivery of the goods. The 2-year provision of 49 U.S.C.A. § 16(3) (b) and (c) relied on by the plaintiff, are applicable to all shippers, but relate only to (b) claims made before the Interstate Commerce Commission and (c) actions at law. The special provision of 49 U.S.C.A. § 66, quoted above, seems to put no time limit on the right of the United States to make deductions, which is consistent with the general doctrine that statutes of limitations do not run against the sovereign.

We conclude that the Government's setoff is not asserted too late, and must be considered on its merits.

To repeat, we held in our earlier decision in this case that the plaintiff could not justify its charges on the basis of Service Order No. 68, to the extent that that order purported to permit a carrier which had available a car of the size ordered, to furnish a larger car and charge the higher rate of the larger car. The remaining question, then, was the question of fact as to whether the plaintiff, when it furnished the larger cars, had available cars of the sizes ordered. Since the shipments in question were made in 1944; the offsets were not asserted, even informally, until 1950; were not pleaded in this case until 1952; and the trial was not held until 1955; the evidence is not clear as to what was done in 1944. The parties dispute as to who had the burden of proof. Since the Government is seeking to set off, against an admittedly valid claim, a claim which it asserts arises out of another transaction, it has the burden of persuading us as to the validity of its offset. However, as a practical matter, the evidence as to the availability of cars of the sizes ordered would be in the hands of the plaintiff railroad, and hence it was expected to give us all the information it had. It did not have much. It is probable that most of the search for cars would have been carried on by telephone, and there would have been no occasion to make a record of the inquiries and the answers to them. A "Report of Cars on Hand" was made by the railroad's yardmaster or agent at each terminal, yard, or station. Those records were required to be kept for 3 years, but were destroyed several years before the trial of this case.

In the absence of direct evidence, the plaintiff was allowed to introduce as "secondary evidence" the testimony of the Superintendent of Transportation of the railroad which received and forwarded the shipments in question, as to the procedure customarily followed by that railroad in 1944 in supplying freight cars ordered by shippers. His testimony is summarized in finding 11. It is, in effect, that the railroad, at the time and place in question, always furnished cars of the type ordered, if such cars were reasonably available. This testimony is believable. We think the natural thing for a responsible agent of a railroad to do would be to supply the customer with what he ordered, if that could reasonably be done. There may have been many cases where it would have been arguable how far one should have gone in his inquiry as to where the cars were, how far a car should be hauled empty to be made available to a shipper at a particular point, etc. There were no doubt some cases in which railroads, and perhaps this railroad, inexcusably failed to furnish shippers with cars of the sizes ordered. On the evidence, we are convinced that that was not generally done, and we have no reason to suppose that it was done in the instance here in litigation.

The plaintiff is entitled to a judgment for $239.80.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.