**UNITED STATES of America**

v.

**PAN AMERICAN VAN LINES, INC., et al., Defendants.**

**No. 76 C 1306.**

United States District Court, E. D. New York.

Feb. 2, 1977.

J. Christopher Jensen, Yonkers, N.Y. (David G. Trager, U.S. Atty., Brooklyn, N.Y., of counsel), for plaintiff.

John L. Alfano, Harrison, N.Y. (Alfano & Alfano, Harrison, N.Y., of counsel), for defendants.

## MEMORANDUM AND ORDER

DOOLING, District Judge.

Plaintiff filed its action to recover "overcharges" from the defendant transportation company and its representatives on July 12, 1976; the summonses were issued to the marshal on the same day, and were served on July 13th and 14th, 1976. Plaintiff had paid nearly all of the more than one hundred charges in question more than three years before it commenced its action, and its right to recover depends in principal part on whether or not the three year statute of limitations generally applicable to such claims was indefinitely extended by defendants' failure to "disallow" plaintiff's written claims for overcharges; all the written claims were presented to the carrier within three years after the charges were paid.

The plaintiff's claims aggregated over $40,000. All except about $474 in value of the claims were for allegedly excessive transportation charges; the claims aggregating $474 were for articles apparently lost in transit. Defendants pleaded the statute of limitations as a defense, and the plaintiff has moved to strike the defense on the ground that on the undisputed facts the defense is insufficient in law.

The motion turns on the interpretation of Section 204a (49 U.S.C. 304a) *, added to the Interstate Commerce Act in 1949, and most particularly of subsection (2) and of subsection (8) as amended and added by Public Law 85–762 of 1958, 72 Stat. 860. Section 204a, which must unfortunately be quoted almost in full, reads:

"(1) All actions at law by common carriers by motor vehicle subject to this chapter for the recovery of their charges,

or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after.

"(2) For recovery of reparations, action at law shall be begun against [such] common carriers . . . within two years from the time the cause of action accrues, and not after, and for recovery of overcharges, action at law shall be begun against [such] common carriers . . . within three years from the time the cause of action accrues, and not after, subject to paragraph (3) of this section, except that if claim for the overcharge has been presented in writing to the carrier within the three-year period of limitation said period shall be extended to include six months from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice.

"(3) If on or before expiration of the three-year period of limitation in paragraph (2) [such] a common carrier . . . begins action under paragraph (1) for recovery of charges in respect of the same transportation service, or, without beginning action, collects charges in respect of that service, said period of limitation shall be extended to include ninety days from the time such action is begun or such charges are collected by the carrier.

"(4) The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after.

"(5) The term "reparations" as used in this section means damages resulting from charges for transportation services to the extent that the Commission, upon

* The 1949 enactment had only six subsections and did not extend to reparations. The limitary period in subsections (1) and (2) was two years. See 63 Stat. 280. The 1958 enactment added present subsection (8) as subsection (7) and made the limitation three years rather than two. Precisely parallel changes were made in Section 16(3) (railroads), Section 308(f), 49 U.S.C. 908(f), (water carriers), and Section 406a, 49 U.S.C. 1006a, (freight forwarders). The 1958 enactment also amended 49 U.S.C.

66, dealing with government traffic, payments and overcharge deductions, by substituting "overcharges by" for "overpayments to" in the first sentence and adding the second sentence defining overcharges. See 72 Stat. 859–861. The 1965 enactment added the clause at the beginning of subsection (2) providing for recovery of reparations in suits started within two years, and added subsection (5), defining "reparations". Old subsections (5), (6) and (7) were renumbered. See 79 Stat. 651.

complaint made as provided in section 216(e) of this part, finds them to have been unjust and unreasonable, or unjustly discriminatory or unduly preferential or unduly prejudicial.

"(6) The term 'overcharges' as used in this section shall be deemed to mean charges for transportation service in excess of those applicable thereto under the tariffs lawfully on file with the Commission.

\* \* · \* \* \* \*

"(8) The provisions of this section 204a shall extend to and embrace all transportation of property [or passengers] for or on behalf of the United States in connection with any action brought before any court or by or against carriers subject to this part: *Provided, however,* That with respect to such transportation of property or passengers for or on behalf of the United States, the periods of limitation herein provided shall be extended to include three years from the date of (A) payment of charges for the transportation involved, or (B) subsequent refund for overpayment of such charges, or (C) deduction made under section 322 of the Transportation Act of 1940 (49 U.S.C. 66), whichever is later." (Underlining in Subsection (2) added.)

Plaintiff's Accounts Receivable Ledger makes clear (1) that many claims were presented in writing and never responded to, or, in any manner, "disallowed"; (2) that many claims were presented in writing, were then protested or disallowed, and were then resubmitted without reduction in the amount claimed, and were not thereafter disallowed a second time or otherwise responded to; and (3) that a certain number of claims were presented, disallowed and then again presented in the same amount and disallowed and thereafter were still again presented in the same amount and were not again disallowed or otherwise responded to. The present action was not commenced within six months after any of the disallowances. Hence plaintiff's reliance, as indicated, is on the proposition that the statute of limitations of Section 204a does not run on a claim presented (or re-presented) and not responded to by written notice of disallowance on the occasion of its last presentation.

Defendant argues that Section 204a(8) is a self-complete and independent limitation which does not, and in fairness should not, incorporate the six months extension of Section 204a(2). Defendant points to the now final initial decision of the Administrative Law Judge in *United States v. Braswell Motor Freight Lines,* a reparations case before the Interstate Commerce Commission in which the related district court action had been filed more than two and less than three years after the charges were paid. The carrier contended that, as the claims were for reparations, the action had to be commenced within two years after the charges were paid. The Judge, however, reasoned that Section 204a(8), when added to the law in 1958, for the first time provided a statute of limitations on claims of the United States which theretofore could not be barred by lapse of time (*Stewart v. United States,* 10th Cir. 1964, 327 F.2d 201, 204; *Strickland Transportation Corp. v. United States,* 5th Cir. 1964, 334 F.2d 172, 179; *United States v. Yale Transport Corp.,* S.D.N.Y.1960, 184 F.Supp. 42). The new subsection provided a limitation of three years. When the two year limitation on reparation claims was later added to subsection (2)—in 1965—(without any change in the language of subsection (8)) the inference was that Congress did not intend to subject the United States to that additional abridgement of its traditional freedom from statutes of limitation. *Cf. United States v. Associated Transport, Inc.,* 1974, 164 U.S. App.D.C. 259, 505 F.2d 366. The Administrative Law Judge did not, in so deciding, accord subsection (8) an independent and self-complete existence; rather he chose one way of dealing with the fact that subsection (8) treats the "periods of limitation herein provided" as being extended for "three years" from certain dates, while the reparations subsection provides a two year period of limitation. Reconciliation was effected by reliance on the consideration that

the claims of the United States are not barred except as it clearly enacts that they shall be.

■■■ The language of subsection (8), nevertheless, does not impose a strict three year limitation with only the adjustments made by the (A), (B) and (C) clauses. It applies the "provisions of this section" to all transportation for the United States in connection with "any action brought . . . by or against carriers subject to" the motor carriers part of the Act. It very evidently modifies the effect of subsection (4) by making the date of payment rather than the date of delivery or tender to the carrier of the property the date when the cause of action for overcharge accrues. That change would appear to apply in favor of the carriers as well as the Government. Finally, the use of the expression "three years" in subsection (8) is not, grammatically, a supercession of the "periods of limitation herein provided" but a reference back to the three year period provided by subsections (1) and (2) as they were modified in 1958.

There is no issue of fairness. Every shipper has the advantage of the presentation—and—disallowance provision although no comparable provision is made on the carrier's side, presumably because it was not thought that it was needed. The Senate Report, 2 U.S.Code Congressional and Administrative News, 85th Cong. 2nd Sess., 1958, p. 3923 *et seq.* does indicate that the intention was to put the Government in the same position as other shippers and to give the carriers the same rights against the Government that it had against other shippers. But that meant, among other things, reducing from six years to three years the time carriers had to sue in the Court of Claims (*Seaboard Air Line R. R. v. United States*, 1949, 83 F.Supp. 1012, 113 Ct.Cl. 437), and establishing a time limit—three years—on the Government's right to take deductions (49 U.S.C. 66 as amended by Section 2 of the 1958 Act). Nothing in the legislative history or in the language of the statute supports an inference that the Congress intended to make unavailable to the Government the presentation—and—disal-

lowance language of subsection (2) or the 90 day extension language of subsection (3). They were available to all other shippers.

■■■ About 80 of the claims involved were presented and never disallowed. As to them there can be no question that the literal effect of subsection (2) is to extend the time to sue indefinitely. Since the carrier can by disallowance start the statute running and the presentation of all claims must be within three years after payment, the provision does not operate harshly. *Galion Iron Works & Mfg. Co. v. Louisville & Nashville R. R.*, 1929, 155 I.C.C. 766, 767.

■■■ Where the claim is presented, disallowed and represented without change and the carrier fails to respond with a renewed disallowance, the effect is the same under the cases decided by the Interstate Commerce Commission. *International Latex Corp. v. Pennsylvania R. R.*, 1956, 299 I.C.C. 369, 370; *Dunlop Tire & Rubber Corp. v. Trans-American Freight Lines*, 1953, 62 M.C.C. 161, 162; *Luther T. Dulaney Co. v. Baltimore & Ohio R. R.*, 1949, 276 I.C.C. 123, 124. The decisions appear sound. There can be substantial practical reasons for resubmitting a claim once disallowed, and it is not to be assumed that the second response of the carrier will be the same as the first in every case.

■■■ The same conclusion is not inevitable when the claim is re-presented after a second refusal. There can be reasons of substance for it, but to justify resubmission there must be a showing of reasons of substance for doing it. Were it otherwise, the exception clause in subsection (2) could be transformed into a means of denying the statute its general effect.

■■■ Defendants suggest that the fact of the carrier's corporate dissolution was the equivalent of a disallowance and that it was duly notified to the Government. But no inference of disallowance flows from the act of dissolution. On the contrary a normal incident of the dissolution of a solvent corporation is the payment of its admitted debts.

The facts have not been developed sufficiently to pass on questions relating to the responsibility of the individual defendants. The corporation ceased to operate as a carrier in June 1973, and it filed a certificate of dissolution in Florida, its state of incorporation, in February 1974; the certificate was accepted in March 1974. On September 3, 1974, counsel for the corporation advised the General Accounting Office that the corporation had been dissolved on February 14, 1974, and that it was no longer conducting any business. On December 20, 1974, the General Counsel of the General Accounting Office advised defendant's counsel that it intended to pursue its claims against the dissolved corporation by seeking payment from the trustees or, if necessary, the shareholders. At the hearing on the motion it was indicated that the distribution of the corporate property was made within a year following dissolution, but it is not supposed that the distribution would be made without retaining assets to meet claims. *Cf. Gould v. Brick*, 5th Cir. 1966, 358 F.2d 437; *Kyle v. Stewart*, 5th Cir. 1966, 360 F.2d 753, 757–758; *Stewart v. United States, supra.*

It is concluded that defendant's motion to strike the defense of the statute of limitations provided in 49 U.S.C. 304a(2), (8) is granted except as to those alleged overcharges which were presented a third time after two earlier disallowances; as to those alleged overcharges the validity of the defense depends on the facts. No determination is made respecting the effect of the terms of the bills of lading.

It is so ORDERED.