**EASTERN FREIGHT WAYS, Inc.,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 351, Docket 25002.

United States Court of Appeals
Second Circuit.

Argued May 8–9, 1958.

Decided July 17, 1958.

Goldman & Drazen, New York City (Milton D. Goldman, Daniel M. Shientag, New York City, of counsel), for plaintiff-appellant.

Paul W. Williams, U. S. Atty., S.D. N.Y., New York City (William Stackpole, Elliot L. Hoffman, New York City, of counsel), for defendant-appellee.

Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District Judge.

WATERMAN, Circuit Judge.

Plaintiff-appellant, a motor carrier, brought this action against the United States under the Tucker Act, 28 U.S.C. § 1346(a) (2), to recover amounts allegedly due for the carriage of freight by appellant's predecessor, State Parcel Corporation, for the United States Army from June 1, 1942 to April 23, 1945. Some five hundred separate shipments are involved, all of which were carried from the Schenectady General Depot of the United States Army to places in the New York metropolitan area. Shortly after each shipment was delivered, the Government paid for it at the tariff rate upon the submission by the carrier of appropriate vouchers and bills of lading. The dispute arose when the United States, commencing in August, 1944, claimed that a special rate had been in effect and that it had been overcharged. Eventually, claims for overcharges totaling approximately $28,000 were sent to the carrier, all of which were either paid under protest by the carrier or deducted by the United States from subsequent freight bills.

In February 1953, the carrier brought the present action to recover its payments and the deductions taken by the United States. After a trial without jury the district court found for the United States on the facts and granted judgment for the United States dismissing the complaint. This appeal presents three questions: (1) whether the claims asserted by the carrier are barred by the applicable statute of limitations; (2) whether the special rate relied on by the

Government is a legal rate; and (3) if the special rate is a legal rate, whether the district court erred in determining that the carrier failed to carry its burden of proof in support of its contention that a cancellation on its face of another special rate should be reformed for mistake so as to cancel the special rate the United States relied upon.

1. *Statute of Limitations.* The United States contends that the carrier's claims are barred by the two-year limitation period of 49 U.S.C.A. § 304a, applicable to claims of motor carriers against shippers. The carrier, on the other hand, contends that the applicable statute of limitations, when the United States is the shipper, is the six-year limitation of the Tucker Act, 28 U.S.C. § 2401(a). The district court, in a thorough opinion by Judge Bryan, 155 F. Supp. 22, decided this issue in favor of the carrier.

■ Were this a matter of first impression we would concede that the Government's arguments have considerable force. But over thirty years ago it was established in decisions of the Court of Claims that the applicable statute of limitations in a case of this kind was the six-year limitation of the Tucker Act, 28 U.S.C. § 2401(a). Southern Pacific Company v. United States, 1926, 62 Ct. Cl. 391. In the intervening period, this interpretation of the federal statutes has become settled law and innumerable suits have been brought under the six-year limitation of the Tucker Act. See, e. g., Hughes Transportation, Inc., v. United States, D.C.E.D.S.C.1953, 109 F.Supp. 373. The Supreme Court has refused to grant certiorari to review the question on at least two occasions in recent years. Union Pacific R. Co. v. United States, 1949, 86 F.Supp. 907, 114 Ct.Cl. 714, certiorari denied, 1950, 339 U.S. 930, 70 S.Ct. 664, 94 L.Ed. 1350; Seaboard Air Line R. Co. v. United States, 1949, 83 F.Supp. 1012, 113 Ct.Cl. 437, certiorari denied 338 U.S. 848, 70 S.Ct. 88, 94 L. Ed. 519.

■ Despite this history, the United States asks us to consider the matter anew. It relies on a dictum contained in a footnote to Mr. Justice Harlan's opinion for the Supreme Court in United States v. Western Pacific R. Co., 352 U.S. 59, 71, note 13, 77 S.Ct. 161, 1 L.Ed. 2d 126, which it interprets as casting grave doubt on the established rule granting to carriers a more lenient statute of limitations against the United States than against any other shipper. We do not presume to speculate as to the meaning of this footnote or why it was included in the opinion of the Court. We are more impressed with what the Court did. Western Pacific, a rail carrier, had commenced suit against the United States as shipper, 352 U.S. 59, 77 S.Ct. 161. Despite the fact that the statute of limitations in a suit against the Government is a jurisdictional matter which can be considered by a federal court even though not raised by the parties, Finn v. United States, 1887, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128, the Court applied the six-year period of the Tucker Act rather than the two-year period of § 16(3) of the Interstate Commerce Act, 49 U.S.C.A. § 16(3). It is not within our province, on such a showing as this, to reinterpret statutes which have had a settled construction, constantly applied, for more than thirty years.

■ 2. *Legality of the Special Rate.* The carrier submitted a special rate quotation to the United States effective September 2, 1941 offering a flat rate for all commodities shipped from the New York area *to* the Schenectady General Depot of the United States Army. The flat rate quoted was an average of the published tariffs on the commodities usually shipped by the United States. Subsequently the carrier made a similar offer, effective September 15, 1941, for all commodities shipped *from* Schenectady to the New York area. On November 1, 1941 the carrier transmitted a notice of cancellation to the Government. The cancellation, on its face, applied only to the September 2 special rate covering shipments from New York to Schenectady. The carrier claims that this was an inadvertence and that the cancellation

was intended to affect the offer of September 15, covering shipments from Schenectady to New York, as the United States either knew or should have known. In any event, from that time forward the carrier billed all Schenectady-New York shipments to the United States at the tariff rate, and was paid on that basis. On post-audit the Government, stating that the special rate quotation of September 15 covering Schenectady-New York shipments was in effect wherever with respect to a particular shipment the flat rate was lower than the published tariff rate, determined that it had overpaid for those shipments on which the tariff rate was higher than the flat rate.

The carrier contends that the United States is prohibited from entering into contracts for carriage based on flat rate quotations unless the rate quoted is lower than the tariff rate on each commodity shipped. Section 217(b) of Part II of the Interstate Commerce Act, 49 U.S.C. A. § 317(b), relied on by the carrier, provides that no common carrier by motor vehicle shall charge or receive a greater or less compensation for transportation than provided for by the applicable tariff. An exception to this rule, however, is created by 49 U.S.C.A. § 22 which authorizes a carrier to charge less than the applicable tariff in contracts with the United States and certain other shippers. The carrier argues that this exception is not applicable to the present case because its flat rate quotation must be read as a whole, that is, as charging the United States more than the tariff on some shipments and less than the tariff on others. If the special rate quotation alone were in evidence this argument would have considerable force, for there would be no warrant for holding

the carrier to its quotation only insofar as advantageous to the Government. But the United States also introduced evidence, accepted by the district court, of a custom among motor carriers by which such flat rate quotations are intended to apply only to situations where the published tariff is higher than the flat rate.[1] Read against the background of this custom, the quotation in issue here is within 49 U.S.C.A. § 22 authorizing carriage for the United States at less than the applicable tariff.

■ The carrier also relies on alleged conversations of one of its officers with "someone at the War Department" as proof of the illegality of the flat rate quotation. During one of these conversations, which took place immediately after the quotations at issue were sent to the United States, the War Department official allegedly advised the carrier that the quotations provided for illegal rates and therefore should be cancelled. Possible application of the parol evidence rule to this testimony can be ignored, since the carrier failed to show any authority in the War Department official to bind the United States by his representations. The carrier cannot rely on the apparent authority of an agent of the United States to bind the United States. Sutton v. United States, 1921, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099.

The only other evidence as to illegality consists of War Department letters rejecting flat rate quotations submitted by the carrier. However, the quotations referred to were not those involved in this case and were not introduced in evidence. The district court was not required to accept these letters as proof that the War Department considered all flat rate quotations illegal.

1. An uncontradicted expert witness for the United States testified that 50% to 70% of the transportation business done by the United States was under special rate quotations; that approximately 25,-000 special rate quotations are on file with the United States; that approximately 5,000 of these special rate quotations are similar to the special rate quotation involved in this case, i. e., giving a flat rate for all commodities shipped; and that it was the common understanding in the transportation industry, continually relied upon by the United States, that a flat rate quotation for all commodities shipped will apply only insofar as it offers reduced rates to the United States, i. e., that the tariff rates will apply when tariff rates are lower than the quoted rate.

**3. *Reformation of the Notice of Cancellation.*** The carrier's alternative position is that the cancellation notice of November 1, 1941 inadvertently cancelled the September 2 quotation covering New York-Schenectady shipments rather than, as was intended, the September 15 quotation covering Schenectady-New York shipments, and that we should so reform the terms of its cancellation. Reformation for unilateral mistake is proper only where the mistake is, or should be, known to the other party to the contract, or where it is induced by that party. Restatement of Contracts (1932) §§ 503–505; 5 Williston on Contracts (Rev.ed.1937) §§ 1548, 1573, 1578, 1597. We think it clear that the carrier failed to make out a proper case for reformation.

The quotations of September 2 and September 15 provided for cancellation in writing. The cancellation notice of November 1, 1941 complied, but on its face applied only to the quotation covering New York-Schenectady shipments. The carrier's only witness did not testify either that the cancellation notice was intended to cancel the quotation of September 15 rather than September 2, or that it was intended to cancel both quotations. Indeed, there is no testimony to the effect that the cancellation contained any mistake at all. The record contains only some testimony that the point of origin invariably appears first on tariff schedules and the point of destination second. Since the notice of cancellation gave the destination first and the point of origin second, it is argued that the United States should have known that the September 15 quotation rather than that of September 2 had been the quotation cancelled.

It is unnecessary to decide whether this evidence, standing alone, would be sufficient for reformation; for the United States introduced convincing evidence, believed by the district court, that the point of origin did not invariably precede the point of destination on tariff schedules. The Government's expert testified that the point of origin usually came first, but in as many as 10% of tariff schedules the usual order was reversed, particularly where, as here, there was one point of destination (the Schenectady General Depot) but several points of origin (various places in the New York metropolitan area).

We hold that the district court did not err in concluding that the carrier failed to sustain its burden of proving that the charges as determined by the United States were erroneous.

Affirmed.