**ISTHMIAN STEAMSHIP COMPANY, Libelant,**

v.

**UNITED STATES of America, Respondent.**

**STATES MARINE CORPORATION, Libelant,**

v.

**UNITED STATES of America, Respondent.**

United States District Court
S. D. New York.

Jan. 16, 1961.

Kirlin, Campbell & Keating, New York City, for libelant (E. L. Smith, New York City, of counsel).

S. Hazard Gillespie, Jr., U. S. Atty., New York City, for respondent; Benjamin H. Berman, Atty. in Charge, Admiralty and Shipping Section, Dept. of Justice, Washington, D. C. (William H. Postner, Washington, D. C., of counsel).

RYAN, Chief Judge.

We have at one trial tried by consent these two suits filed in the Admiralty; common questions of law are presented.

The suits have been brought to recover sums deducted by the Government from freight and demurrage charges earned by libelants for the transportation of Government goods. The parties stipulated in a pretrial order entered on May 16, 1960 that the issues to be tried were:

1. Whether libelants' claims for unpaid freights are time barred by the two year limitation of Section 5 of the Suits in Admiralty Act (46 U.S.C.A. § 745), and

2. If they are not so barred, whether respondents' time barred claims may be asserted as offsets.

We first examine the libels filed.

The original libel in Isthmian Steamship Company v. United States of America (A 187–125) was filed on January 5, 1956 under the Suits in Admiralty Act, § 741, 46 U.S.C.A., by libelant carrier and owner of the S.S. Steel Worker and S.S. Andrew Jackson for freights earned for the transportation of goods of respondent from United States ports to foreign ports under Government contracts on July 23 and September 4, 1954, and claimed $19,440 earned by the S.S.

Andrew Jackson and $9,241.75 by the S.S. Steel Worker, a total of $28,681.75. On June 26, 1956, this libelant filed an amended libel under the Suits in Admiralty Act for freights earned amounting to $41,953.39, the balance alleged to be due after partial payment, allowances and adjustments on freights earned by the two vessels named in the original libel, as well as by several other vessels for the carriage of respondent's cargo from United States to foreign ports on various dates. This amended libel, in addition, also sought recovery for $3,-017.04, the balance alleged to be due after partial payments, adjustments and allowances on demurrage charges for the use by respondent of libelant's pier for shipments belonging to respondent and carried by libelant. It was further alleged in this amended libel that on December 5, 1955, libelant earned additional freights of $30,000 for which it had been paid only $29,482.56 leaving a balance due of $517.44; that respondent does not dispute the amount earned and payable for freight and demurrage, that it has made some payments on account but refused to pay a balance of $45,487.87 and that it has withheld part of this balance to satisfy alleged claims against libelant aggregating $44,506.87 which claims are groundless and unenforceable.

Following the filing of this amended libel, Judge Dawson sustained respondent's exceptions to it, D.C., 150 F.Supp. 191, holding that the suit as pleaded was not timely filed under the Suits in Admiralty Act. Judge Dawson construed the libel as pleading claims for simple breach of contract for failure of respondent to pay and not claims for a balance due on an open running account as urged by libelant. He granted libelant leave to file a further amended libel to enable libelant to attempt to plead an open account running into the two-year statutory period. The amended libel was filed on October 15, 1956 and is now at issue.

In this second amended libel, in the first cause of action (so labeled), libelant pleads an account beginning prior to 1950 and running until April 1, 1956, arising from a course of business between libelant, as carrier, and respondent, as shipper, for carriage for hire, pier storage, stevedoring and lighterage services. It alleges performance by libelant for which respondent became indebted, and also claims by respondent for cargo damage and shortage arising out of such performance, and overpayments of freight and other services rendered to libelant. It also alleges that libelant and respondent from time to time on various dates prior to and after March 31, 1956, when libelant ceased to operate vessels in foreign service, settled and stated these respective claims. It further alleges that respondent sent notices acknowledging its indebtedness to libelant for the various items of account against which it purported to offset groundless and unenforceable claims.

In the second cause of action, libelant alleges that all the freights and demurrage charges due from respondent with certain exceptions were earned less than two years from the filing of the libel or the amended libels.

As a "third cause of action", libelant realleges the indebtedness of respondent and its failure to pay in full because of its purported offsets, and then alleges that, with certain exceptions, the "dates of the government's acknowledgments of its various items of indebtedness and its purported offset of part of such items of indebtedness * * * were within two years of the filing of the libel herein * * * and the amended libel." The schedules showing the items claimed in this second amended libel were identical to those attached to the first amended libel.

Respondent again excepted to this second amended libel upon the ground that the claims were time barred.

Ruling on these exceptions, Judge Bryan held, as had Judge Dawson before him, as to the first cause of action, 191 F.Supp. 335, that libelant had failed to allege facts sufficient to support a mutual running account since the allegations of the prior libel, which negatived the existence of the agreement necessary to sup-

port the allegation of an account, had simply been repleaded and the second amended libel merely pleaded multiple causes of action for alleged breach of contracts based on separate shipments for which separate bills had been presented and against which respondent had made separate claims and deductions. Judge Bryan, finding libelant unable to plead these separate claims as an account stated, denied leave to further amend.

With respect to the second cause of action, Judge Bryan found that, with some exceptions, the claims had been timely filed.

The third cause of action was read by Judge Bryan as "apparently" pleading payment in full for certain of the shipments and the subsequent deduction by the respondent of amounts for alleged damage, or overpayment arising from such shipments, by "offsetting them against other bills presented by libelant for subsequent and different shipments. These deductions were apparently made some time after the libelant's bills for the shipments had been paid in full, presumably after some sort of postaudit or recheck by the Government" and with certain exceptions within two years of the filing of the libel or amended libel. In sustaining this cause of action, Judge Bryan relied on the unrelated case of Eastern Freight Ways v. United States, D.C., 155 F.Supp. 22, Id., 2 Cir., 1958, 257 F.2d 703. This was a suit filed under the Tucker Act (28 U.S.C. § 2401(a)) by a motor carrier to recover transportation charges deducted by the Government as alleged overcharges. These overcharges were alleged to have been made in bills which the Government had paid in full and the deductions were made from bills due for a subsequent and different shipment charge. In Eastern Freight Ways, the Court held (1) that the making of the deductions gave rise to plaintiff's claim and started the period of limitation running, and that this period did not run from the date of the transportation rendered from which the deduction was in fact made, and (2) that the 6-year Tucker Act limitation was applicable rather than the 2-year I.C.A. limitation (49 U.S.C.A. § 304a(1)) because plaintiff was not suing for "charges" but for moneys wrongfully withheld from sums concededly due, and (3) that in any event it was questionable whether the I.C.A. statute was intended to apply to the United States.

Finally, on January 27, 1959, respondent answered, admitted the amounts claimed as earned, and the setoffs, but pleaded as a complete defense the 2-year Suits in Admiralty Act limitation on the ground that libelant's claim for freight arose when it received respondent's goods for carriage and that its claim for demurrage arose when it furnished such service. The answer also pleaded the legality of the withholdings and deductions made alleging that libelant, carrier, was indebted to respondent, Government, in a sum at least equal to that sought in the libel and denied that its claims for overpayment of freight were time barred.

Following the filing of this answer, there came the decision in United States v. Isthmian Steamship Co., 1959, 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845, holding that in an action brought under the Suits in Admiralty Act the respondent United States may not offset claims on unrelated maritime transactions. Thereafter and on January 26, 1960, an order of severance was made herein, and a final decree in the amount of $22,537.38 was entered in favor of Isthmian as to those claims which respondent conceded had been timely filed. This disposed of the claims pleaded in the original libel for unpaid freight on shipments transported on the S.S. Steel Worker and S.S. Andrew Jackson. These claims have been fully paid and are not before us.

We now examine the libel in the other suit before us.

The libel in States Marine Corp. v. United States (A. 195–395) was filed on October 9, 1958. It alleges that on October 30, 1956 libelant had received notice from the respondent that there was due libelant on account of freight earned for the carriage of respondent's goods two specified sums, that these sums had been

recognized and allowed as earned but that there was nothing owing libelant because by setoff these amounts had been applied in partial liquidation of an indebtedness to respondent for loss and damage to respondent's cargo on two voyages, both of which began December 21, 1948 and terminated February 16, 1949. This libel also alleges that on November 22, 1956, libelant had been notified that there had been allowed as earned a certain additional sum for carriage of goods on still another voyage but that part of this sum had been withdrawn and applied as a setoff to liquidate overpayments on other bills; that this setoff was claimed for an indebtedness arising from alleged damage to cargo carried on an earlier voyage; and that on October 26 and November 22, 1956, respondent had caused sums aggregating this alleged indebtedness of $3,155.42[1] to be withdrawn from funds appropriated to pay libelant's freight charges and used them to purchase naval supplies thus converting sums belonging to libelant in breach of their maritime contract; that respondent has never filed suit on these alleged overpayments, that they are now barred by the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., that these alleged offsets do not arise out of the contracts under which the freights were earned and that these sums for freight are therefore now due libelant.

It was stipulated at pretrial, as to the claims of libelant Isthmian, that the remaining claims for freights earned which are undisputed as to amount, dates of loading and discharge and payments withheld as well as the claims for demurrage (also undisputed as to dates and amount), were set forth for the first time in the first amended libel filed July 26, 1956.[2] It is also stipulated with respect to respondent's claims that 27 of the withholdings and offsets represent claims for loss and damage to cargo, that all shipments were delivered to libelant in good condition and redelivered short and damaged, and that with the exception of one all arose on voyages other than those on which libelant's claims arose, including two claims for overpayments of freight; that on none of these was suit instituted within the one year limitation of the Bill of Lading and the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303 (6), provision incorporated in the Bill of Lading. It is also stipulated that libelant as water carriers in interstate commerce were subject to Chapter 12 of the ICA (49 U.S.C.A. § 901 et seq.).

### Applicable Statute of Limitation.

The libel of Isthmian (A. 187–125) specifically alleges the Suits in Admiralty Act as a basis for jurisdiction; the libel of States Marine (A. 195–395), while silent as to a specific statute, does allege a cause within the Admiralty and Maritime jurisdiction of the Court (and is deemed amended to specifically plead the Suits in Admiralty Act).

Libelants, however, now urge that, if their claims are held time barred by the two year limitation of the Suits in Admiralty Act, the six year limitation of

1. It has been stipulated by the parties that the claims of States Marine Corporation in Suit A. 195–395 for freights withheld by respondent are correctly listed and described in the tabulation at the end of this paragraph. Libelant transported shipments of respondent's cargo on the vessels named in the tabulation, which were loaded and discharged on the dates set forth therein. Subject to respondent's contentions hereinafter set forth libelant earned freight in the amounts set forth in the tabulation, payment of which was withheld by respondent on the dates there stated.

| No. | Vessel | Amount | Loaded | Discharged | Payment withheld |
|---|---|---|---|---|---|
| (27) | Seagale | $2,562.40 | 5/2/52 | 5/26/52 | 10/30/56 |
| (28) | Celestial | 70.87 | 12/28/52 | 1/25/53 | 10/30/56 |
| (29) | Westport | 522.15 | 3/21/52 | 4/16/52 | 11/22/56 |

2. See note 2 on page 343.

the Tucker Act (28 U.S.C. § 2401(a)) should be held to apply because the ▮▮ The applicability of the Tucker Act to the claims in suit is not within transportation charges in suit were payable and withheld under 49 U.S.C.A. § 66.

the issues formulated by the pretrial stipulation nor is it pleaded as a basis of jurisdiction; but since, in a suit against the United States, statutes of limitation are jurisdictional, we must consider it. Eastern Freight Ways v. United States,

2. The parties have stipulated as follows with respect to libelant Isthmian's claims (Docket A. 187–125).

1. The claims of Isthmian Steamship Company in suit for freight withheld by respondent not included in the order of severance and final decree entered herein are correctly listed and described in the tabulation at the end of this paragraph. All of the claims were set forth in a pleading for the first time in the amended libel filed June 26, 1956. Libelant transported shipments of respondent's cargo on the vessels named in the said tabulation which were loaded and discharged on the date set forth therein. Subject to respondent's contentions hereinafter set forth libelant earned freight in the amounts set forth in the tabulation, payment of which was withheld by respondent on the dates stated therein.

| No. | Vessel | Amount | Loaded | Discharged | Withheld Payment |
|---|---|---|---|---|---|
| (1) | Steel King | $ 205.00 | 5/22/54 | 8/1/54 | 7/14/54 |
| (2) | Steel Executive | 256.25 | 2/22/54 | 4/19/54 | 4/22/54 |
| (3) | Steel Apprentice | 98.13 | 11/12/53 | 1/12/54 | 2/16/54 |
| (4) | Steel Chemist | 16.01 | 8/8/53 | 10/10/53 | 6/14/54 |
| (5) | Steel Age | 9,274.70 | 2/1/52 | 3/7/52 | 9/16/54 |
| (6) | Steel Traveler | 4,957.45 | 11/21/52 | 12/19/52 | 8/2/55 |
| (7) | Steel Worker) | | 12/21/50 | 2/17/51 | 8/3/55 |
| (8) | Steel Inventor } | $3,986.86 | 10/15/52 | 12/28/52 | 8/3/55 |
| (9) | Steel Designer] | | 2/19/51 | 5/2/51 | 8/3/55 |
| (10) | Steel Designer | 314.91 | 9/18/50 | 11/2/50 | 2/5/51 |
| (11) | Steel Artisan | 670.71 | 10/18/50 | 11/1/50 | 2/15/51 |
| (12) | Kenyon Victory | 153.43 | 2/7/50 | 2/9/50 | 12/4/52 |

2. The claims of Isthmian Steamship Company in suit for demurrage withheld by respondent not included in the order of severance and final decree entered herein are correctly listed and described in the tabulation at the end of this paragraph. They were set forth for the first time in a pleading in the amended libel filed June 26, 1956. In each instance respondent's cargo remained on libelant's piers after the explanation of the free time and until the date listed in the second right hand column of the tabulation. Subject to the respondent's contentions hereinafter set forth, libelant earned pier demurrage in the amounts stated in the tabulation, payment of which was withheld by respondent on the dates set forth in the right hand column thereof.

| No. | Vessel | Amount | Termination of last demurrage period | Payment Withheld |
|---|---|---|---|---|
| (13) | Steel Traveler | $1,271.01 | 12/12/53 | 7/29/54 |
| (14) | Steel Fabricator | 8.90 | 4/9/51 | 7/29/54 |
| (15) | Steel Fabricator | 46.50 | 5/30/52 | 7/22/54 |
| (16) | Steel Navigator | 44.85 | 9/13/52 | 7/22/54 |
| (17) | Steel Traveler | 25.32 | 4/9/51 | 7/22/54 |
| (18) | Steel Traveler | 65.49 | 4/9/51 | 7/22/54 |
| (19) | Steel Fabricator | 4.48 | 4/9/51 | 5/28/54 |
| (20) | Steel Artisan | 16.18 | 7/30/52 | 3/11/54 |
| (21) | Steel Designer | 57.00 | 6/12/52 | 3/11/54 |
| (22) | Steel Designer | 28.50 | 6/9/52 | 3/11/54 |
| (23) | Steel Fabricator | 8.96 | 4/14/51 | 3/11/54 |
| (24) | Steel Fabricator | 93.01 | 5/25/52 | 3/5/54 |
| (25) | Steel Chemist | 1,087.00 | 1/29/53 | 1/21/54 |
| (26) | Various vessels | 259.84 | 7/15/52 | 12/1/53 |

supra; Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128; States Marine Corp. of Delaware v. United States, 2 Cir., 1960, 283 F.2d 776.

It was because of the two year bar of the Suits in Admiralty Act that Judges Dawson and Bryan sustained respondent's exceptions to the amended libels in the Isthmian suit, after a finding that all that there was pleaded was a breach of contract. Judge Bryan sustained the third cause of action because he found that it was alleged that the deductions took place within two years of the filing of the libel. Judge Bryan's reliance on Eastern Freight Ways, supra, was limited apparently to a determination of when libelant's claim accrued for purposes of starting the applicable statute running. That was a suit brought by a *motor* carrier; there was no maritime transaction involved and no question of the applicability of the Suits in Admiralty Act. (None of the cases cited by the Court of Appeals in affirming the District Court's holding involved water carriers.)

The fact that respondent Isthmian in the instant suit withheld the freights sued for under the authority of Section 66 of the ICA (49 U.S.C.A.), which section applies to common carriers subject to the Act (and which it has been stipulated these libelants are for purposes of Chapter 12, 49 U.S.C.A. § 901 et. seq.) does not compel a conclusion that all suits against the United States for freights withheld are to be governed by the Tucker Act (See discussion in Eastern Freight Ways, supra.)

█ For purposes of determining the jurisdiction of the Court, we hold that libelants' claims are maritime in nature, arising out of a maritime transaction, which regardless of the time they ripened remain so. The Supreme Court wrote in Archawski v. Hanioti, 350 U.S. 532, 534, 76 S.Ct. 617, 620, 100 L.Ed. 676— "Though * * * the libel sound in fraud or in the wrongful withholding of moneys, it is plain in the context that the obligation to pay the moneys arose because of a breach of the contract to transport passengers. * * * The prob-

lem is to prevent unjust enrichment from a maritime contract. * * * " We conclude that, so long as the claim asserted arises out of a maritime contract, the Admiralty Court has jurisdiction over it.

█ There is no choice open to libelants; the remedy provided by the Suits in Admiralty Act is exclusive and where a libel may be filed under the Act the contract remedy formerly available under the Tucker Act may no longer be pursued. Prudential S.S. Co. v. United States, 2 Cir., 1955, 220 F.2d 655; Pennsylvania Railroad Co. v. United States, 2 Cir., 1957, 245 F.2d 321; Isthmian S.S. Co. v. United States, 1955, 130 F.Supp. 336, 131 Ct.Cl. 472; Moran v. United States, D.C., 102 F.Supp. 275; Grabbe v. Brownell, 2 Cir., 1957, 247 F.2d 402; cf. United Fruit Co. v. United States, Ct.Cl.1958, 168 F. Supp. 549.

█ Finally the entry of partial judgment in favor of libelant Isthmian, who had never asserted any other basis of jurisdiction for its claims, followed the Supreme Court's holding that in a suit under the Suits in Admiralty Act respondent may not offset the barred claims arising out of unrelated maritime transactions.

█ We conclude, therefore, that libelant Isthmian's right to recover is to be measured by the two year limitation of the Suits in Admiralty Act.

This brings us then to the question of when libelant Isthmian first instituted suit on the remaining claims.

The claims asserted in its first libel, filed January 5, 1956, were for carriage of two shipments delivered to libelant as carrier on July 23, 1954 and on September 4, 1954. These have been paid in full; there remain only the claims set forth for the first time in the amended libel filed June 26, 1956. Each claim represents a separate shipment, under a separate bill of lading under which separate freight was completely earned upon receipt of the goods by libelant, and for which a separate indebtedness arose

on the part of respondent from which it separately deducted a specific sum.

Although amendments are to be freely permitted and especially in the Admiralty are to be freely related back to the original pleading—Adm.Rule 23, 28 U.S.C.; Deurpee v. Levinson, 6 Cir., 186 F.2d 297, certiorari denied 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351, it would nullify all statutory limitation to hold that by amendment entirely new claims arising out of completely independent contracts for other shipments on other vessels to different destinations may be tacked on to a suit filed on claims arising out of two other voyages, and to hold the original libel to have been filed as to all. Each of the claims here sued on is divisible and in no way dependent on the outcome of the other. Both Judges Dawson and Bryan have held that suit had been filed on a series of contracts. The newly pleaded claims, being distinctly separable, cannot be related back to the original libel filed on January 5, 1956 (Balboa Shipping Co. v. Standard Fruit & S.S. Co., D.C., 85 F.Supp. 312, appeal dismissed 2 Cir., 181 F.2d 109; Isthmian S.S. Co. v. United States, 130 F.Supp. 336, 131 Ct.Cl. 472. Suit by Isthmian on all claims remaining was, therefore, filed for the first time on June 26, 1956. In determining that this was timely, it would be necessary to conclude that Isthmian could not have maintained an action and been granted complete relief on any of these claims prior to June 26, 1954. American Eastern Corp. v. United States, D.C., 133 F.Supp. 11. With respect to libelant States Marine, this date would have to be October 9, 1956, since there is no dispute that it filed its libel on October 9, 1958.

While Judge Bryan upheld the third cause of action of the Isthmian libel as timely filed under the rationale of the Eastern Freight Ways case, supra, it was because he read the libel as pleading payment in full and subsequent unlawful deductions (at which time only, if such were the fact, the libelant's cause of action could arise). It is now clear from the stipulated facts and from the exhib-

its submitted that libelant's claims are for freights earned for which it had not been paid in full, rather than for later deductions after payment.

Libelant in its memorandum of law sums up the undisputed facts thus:

"The Government withdrew the amounts it owed the libelants for freight demurrage or other charge from the accounts in the treasury into which funds appropriated to pay such charges were placed, sent the libelant a notice to the effect that these sums were due the libelant from the appropriation indicated and that certain sums had been deducted to pay claims of the government which were specified in the notice. The libelant was sent a check for the balance. The sums stated to have been deposited in different accounts in the Treasury and the appropriation to pay the original charge was treated as depleted by the full amount the government acknowledged to be due the libelant. The sums deducted were treated as available for other governmental purposes."

This is a different situation from that in the Eastern Freight Ways case where plaintiff had been fully paid. Obviously, while Eastern remained fully paid, it had no claim against defendant nor could it have had until the retroactive deduction was made from a subsequent shipment. See also, Southern Pacific Co. v. United States, 62 Ct.Cl. 391.

The distinction was noted in United States v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126. This was a freight rate case brought under the Tucker Act; the Court pointed out that one of the carrier's claims "accrued * * * when the United States paid the lower rate instead of * * * rate for which it was billed", while the claims of the other accrued when the post audit readjustment was made after initial payment at the rate billed (note 12, p. 70).

There remains then the question of when libelants were entitled to be paid

the freight earned on respondent's shipments.

The commercial Bill of Lading (Libelant's Exhibits 2 and 4) under which the shipments moved provided (in the Isthmian form, Exhibit 2):

"15. * * * Full freight hereunder to port of discharge named herein shall be considered completely earned on the receipt of the goods by the carrier * * *." (Identical wording is found in the States Marine form, Libelant's Exhibit 4, under item "14".)

However, it is not disputed that both the carrier and the Government contemplated the conversion of the commercial bill of lading into a Government form of bill. See Libelant's Exhibit 6—General Accounting Policy and Procedures Manual for Guidance of Federal Agencies, Title 5—Transportation, Chapter 3000, Section 3050.10, wherein conversion in the form of Bill of Lading is specifically directed "since payment to the carrier of the transportation charges will not be made by the Government on such commercial document alone."

The Government form of Bill of Lading is in evidence as Libelant's Exhibit 7. Condition No. 1 of the Government Bill of Lading explicitly forbids prepayment of charges and conditions payment on presentation of the "bill of lading properly accomplished and attached to the freight voucher prepared on the authorized Government form." Instruction No. 2, imprinted on the Government bill of lading, provides for surrender of the bill of lading to the carrier with the consignee's signed certificate "on receipt of the shipment" by the consignee. In construing such a Bill of Lading, the Supreme Court held in Alcoa S.S. Co. v. United States, 338 U.S. 421, 70 S.Ct. 190, 193, 94 L.Ed. 225, that the conditions and instructions of the Government Bill of Lading "specifically contemplates actual delivery" and that of this the carrier was put on notice by the express provision of Condition No. 2. Herein it is provided that the Government Bill of Lading is subject to the same rules and

conditions as govern commercial shipments made on the usual forms *"unless otherwise specifically provided or otherwise stated herein"* and this requirement is satisfied by the express reference on the Government Bill of Lading in Condition No. 1.

The terms of the Government Bill of Lading are inconsistent with the commercial Bill of Lading because while under the latter full freight was earned upon receipt of the goods by the carrier, no payment could be demanded or received by libelant until it had made delivery of the goods to respondent and its claim could consequently not accrue until that time.

From the stipulated facts it appears that the only claim of the Suits in Admiralty Act not barred by the two year limitation is Claim No. (1), The Steel King, which seeks payment of $205 for a shipment discharged or delivered on August 1, 1954, which was less than two years before the date of the amended libel specifying this claim. Libelant Isthmian is entitled to a decree for this sum; all the remaining claims are extinguished and as to these remaining claims respondent is entitled to a decree dismissing both libels (States Marine Corp. v. United States, 2 Cir., 1960, 283 F.2d 776).

■ Since none of respondent's time barred claims for alleged damage and overpayment arose out of the shipment which gave rise to Libelant's Claim No. 1 (The Steel King), respondent may not offset any amount against this sum. United States v. Isthmian, 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845; Grace Line, Inc., v. United States, 2 Cir., 1958, 255 F.2d 810.

We also conclude that the right of libelant States Marine to recover is governed by the two year limitation of the Suits in Admiralty Act. The libel of the States Marine was filed on October 9, 1958; payment of the three claims sued upon became due on the dates of discharge of cargo, all in 1952 and were time barred long prior to the filing of the libel. See States Marine Corp. v.

United States, 2 Cir., 1960, 283 F.2d 776. Respondent is entitled to a decree dismissing this libel. Since there is no recovery for libelant on these time barred claims, the validity of respondent's offsets and deductions need not be adjudged.

Let a decree in accordance herewith be submitted.