**NORTHERN METAL CO., Appellant,**

v.

**UNITED STATES of America.**

No. 15070.

United States Court of Appeals
Third Circuit.

Argued March 29, 1965.

Decided Aug. 27, 1965.

Marvin Comisky, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa. (John B. Brumbelow, Goncer M. Krestal, Philadelphia, Pa., on the brief), for appellant.

Martin Jacobs, U. S. Department of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Drew J. T. O'Keefe, U. S. Atty., Sherman L. Cohn, Attorney, Department of Justice, Washington, D. C., on the brief), for appellee.

Before HASTIE and FREEDMAN, Circuit Judges, and WEBER, District Judge.

FREEDMAN, Circuit Judge.

This is an appeal from a judgment entered in favor of respondent on the ground that the libel was filed more than two years after the cause of action arose and thus was barred under the Suits in Admiralty Act, § 5, as amended, 46 U.S.C. § 745, which provides: "Suits as authorized by this chapter may be brought only within two years after the cause of action arises. * * *"

The facts are presented in rather fragmentary form. From the sparse record they may be briefly summarized. On April 30, 1957 libelant entered into a contract to perform terminal stevedoring and processing operations for the United States Army. The contract was performed and invoices were issued which were promptly paid by the Government. Later the Army claimed that it had been overcharged in the amount of $530.96, for which it demanded repayment.

On November 24, 1961 libelant submitted to the Army an invoice amounting to $24,647.21 for similar services performed under a subsequent contract. On November 30, 1961 the Government paid the invoice after deducting the amount of the alleged overcharge on the prior contract.[1] Libelant protested the deduction and on March 9, 1962 the contracting officer decided the dispute and issued his findings and decision that libelant had been overpaid on the earlier contract and that the deduction was proper.[2] Libelant appealed to the Armed Services Board of Contract Appeals, which affirmed the decision of the contracting officer on August 7, 1963.[3] On November 27, 1963 libelant brought this action to recover the $530.-96, claiming that the decision of the Board was arbitrary, capricious and so grossly erroneous as to imply bad faith, and was unsupported by substantial evidence. The action thus was instituted a few days after the expiration of the two-year period if computed from the date of the invoice and a few days prior to its expiration if computed from the date when the Government made the deduction.

On these facts the learned District Judge granted respondent's motion for summary judgment.

Libelant first contends that its cause of action arose on November 30, 1961 when the Government made the deduction, rather than on November 24, 1961 when the invoice was submitted to it. If this is correct the action was timely. The second contention is that the cause of action arose only after the administrative remedy required by the contract was completed. Finally, it is argued that the statute was tolled during the pendency of the administrative remedy.

I

Libelant clearly has a claim for the unpaid balance of the present contract, a claim which was due on November 24, 1961 when the invoice was submitted.

Libelant argues, however, that when the Government's failure to pay is based on an alleged overpayment in an earlier transaction two causes of action exist, one for "a failure to pay the full amount of current charges" and the other for a "wrongful deduction". Thus the designation of the claim in the libel would

---

1. The Government deducted a small amount not here involved, in addition to the amount of the alleged overcharge.

2. The date and manner in which the dispute was brought to the contracting officer and the text of his decision do not appear in the record.

3. Neither the date on which the appeal was taken nor the text of the decision of the Board appears in the record.

determine the time of commencement of the statutory period. It is clear, however, that whether the libel describes the cause of action as a failure of respondent to pay the current bill in full or as a wrongful deduction from the payment makes no difference and the case would not be altered on the Government's assertion that the reason for the withholding is the overcharge on an earlier contract. For in any event the reason which led the Government not to pay the invoice in full does not, when expressed, create a new cause of action. The Government's nonpayment of this sum—or its deduction, as libelant calls it—is not a tort for which a separate cause of action arose. It is nothing other than the nonpayment of part of the contract price.

The cases on which libelant relies[4] are inapplicable. They are not suits brought in admiralty. They were brought under § 322 of the Transportation Act of 1940, 49 U.S.C. § 66, which expressly authorizes the Government to pay transportation charges on presentation of bills and before audit, but reserves to it the right to deduct the amount of any later discovered overpayment from unrelated claims admittedly due to the carrier.[5] Thus the carrier is paid immediately upon submission of its bill instead of waiting for audit, and in return is required to refund all overcharges which the Government later claims. Thereupon the parties are restored to their original footing and the carrier is obliged to collect the sum refunded by establishing the correctness of its bill to the Government agency or by proving it in the courts.

In United States v. N. Y., N. H. & H. R. Co., 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957), the carrier sought to relieve itself of the burden of proof by framing its pleading as a claim for payment in full of the current bill rather than the repayment of the deduction which represented the earlier overcharges. The Government, however, in its answer pleaded a credit for the overcharges and alleged that it had paid the balance by check. In response, plaintiff was compelled to admit that it received the check, leaving a balance due and unpaid. The Court rejected artificialities in pleading which would obscure the true issue, saying: " * * * [C]onventional principles of contractual setoff should not govern the determination of the carrier's burden of proof in this action merely because the complaint frames an action for recovery of the full amount of the 1950 bill rather than the amount deducted therefrom. * * * The true dispute between the parties, arising from the determination and collection of the overpayments as authorized by § 322, involves the lawfulness of the 1944 bills. It is the substance, not the form, which should be our concern." (pp. 262–263, 78 S.Ct. p. 218). In cases under the Transportation Act, therefore, the so-called deduction by the Government is a significant act; it is the congressionally authorized recoupment of the overpayment made before audit.

The Suits in Admiralty Act, however, does not contemplate that the Government will raise the propriety of earlier overcharges by a deduction from the current bill. The Government's position in admiralty cases is the same as that of any private maritime litigant. It may plead a setoff only if it arises out of the same transaction. In a case such as this, where the Government's claim is on an unrelated transaction, the proper remedy in admiralty is to raise the issue affirmatively in a separate action. United States v. Isthmian Steamship Co., 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845

---

4. United States v. N. Y., N. H. & H. R. Co., 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957); Baggett Transportation Co. v. United States, 319 F.2d 864 (Ct.Cl. 1963); Baltimore and Ohio Railroad Co. v. United States, 158 F.Supp. 862

(Ct.Cl.1958); Eastern Freight Ways, Inc. v. United States, 155 F.Supp. 22 (S.D.N.Y.1957).

5. See United States v. Isthmian Steamship Co., 359 U.S. 314, 319 n. 3, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959).

(1959); Grace Line, Inc. v. United States, 255 F.2d 810 (2 Cir. 1958).[6]

The parties each rely on different aspects of Isthmian Steamship Co. v. United States, 302 F.2d 69 (2 Cir. 1962). There as in the present case libelant had entered into successive contracts with the Government, an earlier contract had been performed, the Government had paid the full amount of the appropriate invoice, and when libelant submitted its invoice on a subsequent contract the Government refused to make full payment but instead deducted an amount which it claimed to be an overpayment it had discovered on the post audit of the earlier invoice. More than two years after the presentation of the second invoice, but less than two years after the Government's deduction of the overpayment, libelant sued for the difference deducted. The Court of Appeals for the Second Circuit in a per curiam opinion affirmed the decision below that the claim was barred by the expiration of the two-year period.

Libelant seeks to distinguish this decision as based on a libel which clearly claimed a failure to pay the current charges. The case was heard twice in the district court. In the first instance, Isthmian Steamship Co. v. United States, 191 F.Supp. 335 (S.D.N.Y.1957), the Government's motion to dismiss was denied on the ground that the libel had alleged that the Government had made an unlawful deduction which constituted the cause of action and was within the statutory period. At the trial of the case, Isthmian Steamship Co. v. United States, 191 F.Supp. 338 (S.D.N.Y.1961), this ruling was put aside on the ground that it had resulted from a reading of the libel as pleading payment in full and a subsequent unlawful deduction, whereas the trial had made it clear that the claim was for charges accrued for which payment had not been made in full rather than for "later deductions after payment". We believe that such refinements

serve no useful purpose and that cases such as this should be governed by the real nature of the claim.

It clearly appears, therefore, that libelant had a claim against the Government on November 24, 1961 when it submitted its invoice, a claim which the Government did not pay in full, and that the action brought on November 27, 1963 for the unpaid balance was filed after the statutory period had run. The suit, therefore, is barred unless, as libelant claims, the administrative proceedings in some way extended the statutory time.

## II

Libelant first contends that its cause of action did not arise until the determination of the appeal by the Armed Services Board of Contract Appeals on August 7, 1963 and that its libel filed on November 27, 1963 therefore was within the prescribed two-year period. A similar contention was rejected in McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), an action by a seaman for damages for injuries resulting from negligence and unseaworthiness and for maintenance and cure. The Supreme Court held that the time fixed in the Suits in Admiralty Act ran from the date of the injury rather than the date when the claim was administratively denied, even though the Clarification Act of 1943 (50 U.S.C.App. § 1291(a)) provided that such claims were enforceable " * * * if administratively disallowed in whole or in part * * * ". The same principle is equally applicable here. See States Marine Corp. of Delaware v. United States, 283 F.2d 776, 778 (2 Cir. 1960).

There remains the question whether the running of the statutory period was tolled during the pendency of the administrative proceedings.[7]

Statutes of limitations are statutes of repose. On their face they seek to create a time bar which is me-

6. See 31 U.S.C. § 227.

7. This question was left open in McMahon v. United States, 342 U.S. 25, 72 S.Ct.

17, 96 L.Ed. 26 (1951), because it did not appear that the determination of the question would affect the result.

chanical and has no relation to the merits of the claim or whether, as in laches, any harm has resulted to the defendant from the delay. The easy solution of a chronological time limit has proven impossible in practice. Many situations have arisen where courts of justice have been compelled to recognize the right to sue even though by the clock alone the time has run. So it early came to be recognized that the statute of limitations would not begin to run against an action for fraud until its discovery by plaintiff. Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874). More burdensome to a defendant have been those cases where the operation of the statute was held to be suspended during the period when plaintiff could not be aware of the accumulating injury resulting from defendant's wrongful conduct. See Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Daniels v. Beryllium Corporation, 211 F.Supp. 452 (E.D.Pa. 1962), 227 F.Supp. 591 (E.D.Pa.1964). Similarly, where the negligence of a surgeon remains unknown until its ill effects generate discovery of the cause, the statute has been held by some courts to begin to run only when the effect of the negligence became manifest. Urie v. Thompson, supra; Daniels v. Berryllium Corporation, supra; Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959).

In all these cases the modern view is to hold that the period of limitations is tolled because of the plaintiff's innocence, even though the defendant had no knowledge that a claim would be made against him. This view has been more readily applied in cases where a common law right is limited by a statutory time bar. Such a statute is clearly remedial. It does not affect the cause of action, but merely affords a defense which one who

is sued may plead affirmatively (F.R.Civ. P. § 8(c)) or waive, as he chooses. It has been thought more difficult to relax the requirements where the time limitation is fixed by the same statute which creates the cause of action. It has been said that in such a case the time limit is an inherent element of the right and the cause of action is extinguished automatically on the expiration of the specified time. Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813 (1926); Williams v. United States, 228 F.2d 129 (4 Cir. 1955); Damiano v. Pennsylvania Railroad Co., 161 F.2d 534 (3 Cir. 1947). Since both the limitation and the right to sue are created by the Suits in Admiralty Act it has been characterized as belonging to this latter category.[8]

As in the case of the remedial statutes of limitations, the so-called "substantive" statutes have been impossible to enforce without exception. Although it was at first held that the statutes are mandatory and not even the fraud of the defendant could extend the statutory time,[9] later decisions have discredited this view as harsh and unjust. Thus in Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), the three-year statutory period of limitations fixed by the Federal Employers' Liability Act was held inapplicable because defendant had fraudulently induced plaintiff's delay by representing that he had seven years in which to sue.[10]

The Supreme Court very recently indicated that the distinction between the remedial and substantive time limitations should not be given undue weight in deciding questions dealing with the extension of the time limit. In Burnett v. New York Central Railroad Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), the Court held that where a

---

8. States Marine Corp. of Delaware v. United States, 283 F.2d 776 (2 Cir. 1960); Abbattista v. United States, 95 F. Supp. 679 (D.N.J.1951).

9. Damiano v. Pennsylvania Railroad Co., 161 F.2d 534 (3 Cir. 1947); Pollen v. Ford Instrument Co., 108 F.2d 762 (2 Cir. 1940).

10. The Court approved the earlier decision to the same effect in Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253 (4 Cir. 1949). See also Osbourne v. United States, 164 F.2d 767 (2 Cir. 1947), where the two-year statute of limitations under the Suits in Admiralty Act was tolled during plaintiff's internment as a prisoner of war.

timely FELA action brought in a state court having jurisdiction was dismissed for improper venue, the FELA statute of limitations was tolled during the pendency of the state suit. Mr. Justice Goldberg made it clear that the fundamental test in both classes of cases is the congressional intention, which is to be determined by examining the purposes and policies which underlie the limitation provision and the statute of which it is a part: "Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct. 582, 88 L.Ed. 788. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

"This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights." (p. 428, 85 S.Ct. p. 1054).

Here the Government itself imposed in its vast procurement program a standard Disputes Clause [11] which required that its contracting officer should decide on the job any factual controversy that may arise and made such a determination binding on the contractor unless he appeals to the Armed Services Board of Contract Appeals, whose decision in turn is also binding unless it is arbitrary, capricious and so grossly erroneous as to imply bad faith, or is not supported by substantial evidence. This procedure has been held to be exclusive and ordinarily must be exhausted before a contractor may appeal to the Courts.[12] The present language of the Disputes Clause combines earlier versions and the limited scope of judicial review of departmental decisions required by the so-called "Wunderlich" Act of 1954, 41 U.S.C. § 321. The Act, while slightly extending judicial review to cases other than fraud, nevertheless declared that departmental decisions under the Disputes Clause shall in

11. 32 C.F.R. § 7.103–12 establishes and requires a Disputes Clause in Government contracts in general; see also 32 C.F.R. § 596.103–12, relating to contracts of the Department of the Army.

The Disputes Clause in the present contract reads as follows: "Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence, be final and conclusive; provided that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. * * *"

12. In United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239–240, 66 S.Ct. 1000, 1003, 90 L.Ed. 1192 (1945) the Court said of the Disputes Clause: "Solely through its operation may claims be made and adjudicated as to matters arising under the contract. * * * [a]nd in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court." See also United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); United States v. Peter Kiewit Sons' Co., 345 F. 2d 879, 884 (8 Cir. 1965).

general be final and conclusive.[13] It would be anomalous to require that a contractor must bring suit even though the exclusive governmental procedure, thus recognized by Congress, is still going on. A number of decisions have indeed held that before the two-year period has expired a "protective" action must be brought, although it will be stayed and remain dormant until the administrative proceedings are concluded. Wessel, Duval & Co. v. United States, 126 F.Supp. 79 (S.D.N.Y.1954), approved in States Marine Corp. of Delaware v. United States, 283 F.2d 776, 779 (2 Cir. 1960). We do not believe it would be in accord with the congressional purpose to require the bringing of a "protective" libel in cases such as this. The dockets of the courts are too crowded for Congress to have intended that suits must be brought while the governmental tribunal is engaged in ascertaining the facts which will determine whether the Government will pay the claim.

In the present case libelant has been aware of its rights from the beginning and is chargeable with knowledge of the requirement that a suit in admiralty must be brought within two years. On the other hand, while the Government did not affirmatively mislead libelant its procurement requirements established a method for preliminary determination of disputes and required libelant to pursue this administrative remedy. Since the Government through its contracting officer and the Armed Services Board of Contract Appeals not only was aware of the claim but was engaged in deciding its merits, it would be harsh and out of harmony with the purpose and intention of Congress to hold that the statutory time ran during the pendency of the administrative proceedings.

It is urged upon us that this will give the contractor the power to alter the period of limitations because the Disputes Clause does not fix a time within which a disputed issue of fact must be presented to the contracting officer.[14] Where the time is tolled after a cause of action has arisen, no right is given to the contractor to extend indefinitely the period of suspension of the statute. On the contrary, the time would run during the contractor's delay in presenting the dispute and would be tolled only during its pendency before the contracting officer and the Armed Services Board of Contract Appeals, a period which is in the control of the Government's employees and not of the contractor.

We hold, therefore, that the limitations time was suspended while the controversy was pending before the contracting officer and the Armed Services Board of Contract Appeals. The libel accordingly was filed within the statutory time.

The judgment of the court below will be reversed.

13. The Act overcame the decision in United States v. Wunderlich, 342 U.S. 98, 72 S. Ct. 154, 96 L.Ed. 113 (1951), which held that departmental decisions under the Disputes Clause as then written were final unless founded on fraud. See United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

The Act provides: "No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C. § 321.

14. This point was made in McMahon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951), but was restricted to the question whether the cause of action did not arise until the administrative decision was made.